A. T. SPOTTS, Administrator, etc., Appellant, *v.*
MARY HANLEY et al., Respondents.

New-trial Statement — Insufficiency of Evidence — Specifications.
— Specifications in a statement on motion for new trial, of particulars of the insufficiency of the evidence to sustain the decision of the trial court, which do not purport to state wherein in any particular the evidence is insufficient to sustain or justify the decision, but merely state that there was no evidence to sustain or justify certain findings by numbers, or which stand alone as mere statements as to what the evidence shows, or as to what it was upon the trial, without being joined to a proper specification, are insufficient, under section 659 of the Code of Civil Procedure.

Van Ness Ordinance — Actual Possession — Usual Indicia of Ownership — Questions of Fact — Province of Jury and Court. — In determining the existence or non-existence of *possessio pedis* necessary to confer title to land in San Francisco, under the Van Ness ordinance, it is the peculiar province of a jury, under proper instructions of the court, to decide whether or not the acts of dominion relied on, considering the size of the tract, its peculiar condition, and appropriate use, were of such a character as usually accompany the ownership of lands similarly situated, and the court, when sitting without a jury, should decide the same questions of fact upon the same basis.

Id. — What Constitutes Possessio Pedis — Exclusive Control — Defined Boundaries — Inclosure not Required. —The possession which the law requires to show a *possessio pedis* is the subjection of the land claimed to the will of the claimant, consisting in doing as he wishes with the land, and excluding others therefrom; and an actual and open occupation of a tract of land marked out by and within visible and defined boundaries, and a subjection of such land to the dominion of the occupant, to the exclusion of all others, is sufficient to show a *possessio pedis*, which, if continued long enough, will satisfy the requirements of the law, and establish title, under the Van Ness ordinance, whether there be an inclosure or not.

Possession of Administrator — Privity — Rights of Heirs — Ejectment — Conveyance before Distribution. — The administrator's possession and title to land is not adverse to the heir, but the administrator is in privity with and represents both heirs and creditors; and so far as any but creditors are concerned, the heir in whom the title vests, subject only to the right of the administrator to dispose of the land to pay debts, has the right to the title and possession, and the right to maintain an action and recover possession, as against any one except the administrator, and may convey his title and right of possession while the estate remains undistributed.

Id. — Ejectment by Administrator — Estoppel of Judgment — Rights of Vendees of Heir. — A judgment in ejectment recovered by or

against an administrator is an estoppel in favor of or against the heir and those claiming under him; and a judgment recovered in such action by the administrator inures to the benefit of those to whom the sole heir had conveyed prior to the recovery of such judgment.

Appeal — Failure to Find on Material Issue — Decision against Law. — The fact that there is no finding upon a material issue raised by the pleadings may be considered on appeal, where one of the grounds given in the notice of motion for new trial is, that the decision is against law.

Id. — Failure to Find not Affecting Result. — The failure of the lower court to make a finding as to a matter which would not affect the result is not sufficient to reverse an order refusing a new trial.

Landlord and Tenant — Judgment in Ejectment against Tenant — Estoppel — Evidence of Possession — Fraud and Collusion. — A judgment in ejectment in favor of one claiming title to land, against one in possession of the land as tenant of an adverse claimant, who was not a party to the suit, though not an estoppel as to the title, is admissible in evidence in an action of ejectment brought by the adverse claimant against the successful party in the first action, when taken with other evidence, to show where the actual possession of the property was, and when it ceased to be peaceable, and that the only possession had by the adverse claimant was by a tenant who originally held under the plaintiff in the first action, and who had no possession adverse to him, but one founded in fraud and collusion.

Id. — Disturbance of Adverse Possession — Suit against Tenant — Parties — Privity of Landlord — Statute of Limitations — Relation of Possession Recovered. — The adverse possession of a landlord by his tenant is disturbed when the tenant is sued, though the landlord is not made a party to the suit, and there is such a privity between them that the suit against the tenant stops the running of the statute of limitations in favor of the landlord, and the judgment of possession against the tenant affects the landlord as well as the tenant, and the possession recovered by the plaintiff dates by relation back to the commencement of the action.

Appeal from an order of the Superior Court of the city and county of San Francisco denying a new trial.

The facts are stated in the opinion.

*T. Z. Blakeman,* for Appellant.

Dyson had the Van Ness ordinance title. (*Hubbard* v. *Barry,* 21 Cal. 323; *San Francisco* v. *Beideman,* 17 Cal. 443.) In order to determine what is actual possession in a given case, regard must be had to the nature of the land, and to its uses or non-use. (*English* v. *John-*

*son*, 17 Cal. 116; 76 Am. Dec. 574; *Plume* v. *Seward*, 4
Cal. 95; 60 Am. Dec. 599; *Hicks* v. *Davis*, 4 Cal. 67;
*Bradshaw* v. *Treat*, 6 Cal. 172.) The present case comes
within the law laid down by the court in *Brumagim* v.
*Bradshaw*, 39 Cal. 25, 51. Dyson succeeded to Treat's
prior possession of the entire tract, by regular deed of
conveyance, entered and held under said deed the entire
tract, and thereafter lived upon the tract and used it as
his own, and had constructive possession of the entire
tract, which prior and constructive possession must pre-
vail over any one who intrudes without right or title.
(*Southmayd* v. *Henley*, 45 Cal. 101; Code Civ. Proc., secs.
322, 323, subd. 3; Stats. 1850, p. 343; *Gunn* v. *Bates*, 6 Cal.
272; *Hicks* v. *Coleman*, 25 Cal. 137; 85 Am. Dec. 103;
*McKee* v. *Greene*, 31 Cal. 418; *Baldwin* v. *Simpson*, 12 Cal.
560; *Donahue* v. *Gallavan*, 43 Cal. 573.) When Altvater
entered upon his first and second claim he was a tres-
passer upon the prior possession of Dyson, and unless
he maintained an actual adverse and continuous posses-
sion for the full period of five years, he acquired no
right. (*Hodges* v. *Eddy*, 31 Vt. 344; *Brady* v. *West*, 60
Mo. 33; *Norris* v. *Russell*, 5 Cal. 249; *San Francisco* v.
*Fulda*, 37 Cal. 349; 99 Am. Dec. 278; *San José* v. *Trim-
ble*, 41 Cal. 536.) A judgment in ejectment against the
tenant is not admissible for any purpose against the
landlord unless the landlord has appeared in the action
or defended in the name of the tenant, or has been noti-
fied and had an opportunity to defend. (*Calderwood* v.
*Brooks*, 28 Cal. 152; *Wheelock* v. *Warschauer*, 34 Cal. 265;
*Valentine* v. *Mahoney*, 37 Cal. 399; *Dutton* v. *Warschauer*,
21 Cal. 620; 82 Am. Dec. 765; *Douglas* v. *Fulda*, 45 Cal.
592; *Shay* v. *McNamara*, 54 Cal. 175; *Ryerss* v. *Rippey*, 25.
Wend. 432; *Wheeler* v. *Ryerss*, 4 Hill, 467; *Oetgen* v. *Ross*,
47 Ill. 145; 95 Am. Dec. 468; *Smith* v. *Towle*, 22 Wis.
655.) The plaintiff in *Plate* v. *Taggart*, by allowing the
action to lie for over ten years after the defendant had
answered setting up his tenancy and his landlord's title,

without bringing the action to trial, must be deemed, as against the landlord, to have abandoned the action. (*Simmons* v. *Keller*, 50 Cal. 38; *Grigsby* v. *Napa Co.*, 36 Cal. 588; 95 Am. Dec. 213; *Chipman* v. *Hibberd*, 47 Cal. 638; *Dupuy* v. *Shear*, 29 Cal. 243; *Hook* v. *Hook*, 15 Phila. 631; *Wilson* v. *Altemus*, 2 Watts & S. 258; *Iowa M. Co.* v. *Bonanza M. Co.*, 16 Nev. 65.) A judgment against the tenant without joining the landlord is not admissible in evidence against the landlord for any purpose. (*Ryerss* v. *Wheeler*, 25 Wend. 438; *Wheeler* v. *Ryerss*, 4 Hill, 467.) Only a sale by the administrator or distribution by order of court can rightfully change the possession or right of possession in the administrator of the realty belonging to the estate. (*Curtis* v. *Sutter*, 15 Cal. 259, 265; *Chapman* v. *Hollister*, 42 Cal. 463; Code Civ. Proc., sec. 1453.) Adverse possession, to be available as a defense or as a title, must have been continuous, both in time and interest, for the full statutory period. (*San Francisco* v. *Fulda*, 37 Cal. 352, and cases there cited.)

*Mastick, Belcher & Mastick*, for Respondents.

Only one of the specifications is relied on or argued in appellant's brief. The others must therefore be considered as waived. (*West* v. *Crawford*, 80 Cal. 19, 33; *Bonner* v. *Quackenbush*, 51 Cal. 180; *Dougherty* v. *Henarie*, 49 Cal. 686.) Whatever title Treat or his grantee, Dyson, may have had was lost, and the title, under the Van Ness ordinance, vested in defendants' grantors by adverse possession. (*Pickett* v. *Hastings*, 47 Cal. 269, 284; *McLeran* v. *Benton*, 73 Cal. 329, 343.) The eighth specification is nugatory. (*Eddelbuttel* v. *Durrell*, 55 Cal. 277; *Parker* v. *Reay*, 76 Cal. 103.) Under no circumstances can a specification avail anything, when directed to a matter of mere evidence. (Hayne on New Trial and Appeal, sec. 150, p. 431; *Barstow* v. *Newman*, 34 Cal. 91; *Goodrich* v. *Van Landigham*, 46 Cal. 601; *Lewis* v. *Kelton*, 58 Cal. 303; *Bate* v. *Miller*, 63 Cal. 233; *Smith* v. *Christian*, 47 Cal. 18;

*Heilbron* v. *Irrigation Ditch Co.*, 76 Cal. 8.) An actual
and open occupation of a tract of land within visible and
defined boundaries, and a subjection of the land to the
dominion of the occupant to the exclusion of all others,
shows a *possessio pedis* which will satisfy the requirements
of the law, whether there be an inclosure or not. (*Shel-
don* v. *Mull*, 67 Cal. 299; *Goodrich* v. *Van Landigham*, 46
Cal. 601; *Brumagim* v. *Bradshaw*, 39 Cal. 24, 44; *McCreery*
v. *Everding*, 44 Cal. 246, 252; *Howell* v. *Rogers*, 47 Cal.
291; *Valencia* v. *Couch*, 32 Cal. 340, 344; 91 Am. Dec.
589.) Dyson obtained the possession now relied on, by
purchase from and in collusion with the tenant of Alt-
vater. He was therefore estopped, while that possession
lasted, from denying the title of Altvater, and the posses-
sion so obtained was not " adverse," within the meaning
of the statute of limitations, and could never ripen into
a title. (*Standley* v. *Stephens*, 66 Cal. 541; *Springs* v.
*Schenk*, 99 N. C. 551; *Anderson* v. *Parker*, 6 Cal. 197, 200;
*Pardee* v. *Gray*, 66 Cal. 524; *McKune* v. *Montgomery*, 9
Cal. 575; *Rose* v. *Davis*, 11 Cal. 133; Wood on Limita-
tions, sec. 265, and notes; *Stewart* v. *Roderick*, 4 Watts &
S. 188; *Galloway* v. *Ogle*, 2 Binn. 468.) Possession re-
covered in ejectment relates back to the commencement
of the action. (*Dunn* v. *Miller*, 75 Mo. 260, 272.) The
landlord is concluded by the action of ejectment against
the tenant. (*Smith* v. *Gayle*, 58 Ala. 604, 605; *Sampson*
v. *Ohlcyer*, 22 Cal. 206, 207; *Read* v. *Allen*, 56 Tex. 176;
58 Tex. 380; *Allen* v. *Read*, 66 Tex. 13; *Newman* v. *Bank
of California*, 80 Cal. 368.) Upon the death of the
ancestor, the heir becomes vested at once with the full
property, subject to the liens of creditors; and subject
to these liens and the temporary right of possession of
the administrator, he may at once sell and dispose of the
property. (*Brenham* v. *Story*, 39 Cal. 179, 183.) The
administrator is in privity with and represents both
heirs and creditors; and a judgment in ejectment recov-
ered by or against an administrator is an estoppel in

favor of or against the heir and those claiming under him. (*Cunningham* v. *Ashley*, 45 Cal. 485, 493; *McLeran* v. *Benton*, 73 Cal. 329, 342.) As to lands within the Van Ness ordinance, no title can be acquired by constructive possession merely, and title, under that ordinance, can be obtained only to lands which have been reduced to actual possession. (*Davis* v. *Perley*, 30 Cal. 630, 639; *Judson* v. *Malloy*, 40 Cal. 299, 309; *Pattee* v. *Moyle*, 44 Cal. 363.)

FOOTE, C. — This action is in ejectment for certain lots of land in blocks 11 and 12, lying in that portion of the city and county of San Francisco called the Potrero Nuevo.

The defendants had judgment rendered in their favor by the court, which tried the action without the intervention of a jury. The appeal here prosecuted is from an order refusing to set aside that judgment and grant a new trial.

The appellants seem to rely mainly for a reversal of the order upon three grounds: 1. The evidence was insufficient to warrant certain of the findings; 2. That the court failed to find upon a material issue raised by the pleadings; 3. That the court committed error in overruling "the plaintiff's objections to the judgment roll, — *Plate* v. *Taggart* being received in evidence, and in admitting the same in evidence."

The plaintiff claims title in his intestate, Dyson, derived from one George Treat, who, he maintains, was, in the year 1850, and for some time thereafter, in the actual possession of the whole of the Potrero Nuevo, which is a peninsula containing about eleven hundred acres of land, bounded on three of its sides by Mission Creek, the bay of San Francisco, and Precita Creek, and the marshes which adjoin those creeks, and on the end or neck thereof by a stone wall.

The alleged prior possession of the plaintiff's intestate,

as giving him title under the Van Ness ordinance, seems to be the main ground relied on by the plaintiff to support his contention of his right to recover·in this action.

Passing for the moment the question as to whether the specifications of particulars as to the insufficiency of the evidence to support the findings are of such character as to admit of an examination of the evidence in the transcript, it seems that the facts relied on to uphold the claim of the plaintiff are: That George Treat repaired and partially rebuilt a stone wall and fence across the neck of the Potrero from Mission to Precita Creek, and placed a gate in the wall, through which cattle and horses were admitted, and pastured upon the peninsula above referred to. About the year 1852, this land was settled upon by "squatters," who possessed themselves of various portions of it, and maintained such possession in spite of the efforts of Treat and his grantee, Dyson, to dispossess them. About the year 1856 this whole parcel of land appears to have been divided into blocks and lots as part of the city of San Francisco. In the year 1852 it seems that Bowman, through whom the defendants claim, entered upon a tract of land contained within the limits of the Potrero, and including the land in controversy here, of about 150 acres in extent, and that his entry was adverse to and in defiance of the claim of Treat, and there is evidence which tends, at least, to show that at first he put up the kind of fences then in use by the "squatters" generally,—that is; "skeleton fences,"—and that he excavated small ditches along the lines of his claim; the westerly side of his claim being bounded by the stone wall across the neck of the Potrero, and one of the creeks above mentioned, the northerly and easterly sides being the fences and ditches common to Bowman and others, "squatters, or settlers," who adjoined him on those sides, and the southerly side was bounded by a fence placed there by Bowman between his claim and that which Treat claimed.

When Bowman first erected these inclosures they were slight and insecure, like those of all others who, like himself, claimed the land around which they erected them, but by the year 1854 these inclosures were of as substantial a character as the then condition of the country and the surroundings warranted. They were certainly sufficient to show that Bowman claimed and exercised dominion and control over the land which they surrounded. In the language of the witnesses, Bowman's inclosure was "as good as men could make on the Potrero," and " the whole tract was inclosed very well for the times." Bowman and his family lived within this inclosure, and upon his claim, in a house which he erected for that purpose, until some time in 1855, when he moved away, having, in February, 1854, conveyed his claim to one Stewart. During the time of Bowman's occupancy he kept cattle, horses, and hogs, plowed some of the lands, and had certain buildings thereon which he rented to others. After the year 1854, when there was a dispute and some violence between Treat and Bowman as to their conflicting claims, Bowman seems to have remained in peaceable possession until he left, in 1855, and delivered possession of the land to Stewart; for it seems that after the dispute and fight between Bowman and George Treat, in 1854, when Bowman's house was torn down, that nevertheless Bowman "continued to live there until about the spring of 1855, and C. V. Stewart, his partner and grantee, succeeded him on the place." Then Harvey S. Brown became interested with Stewart, " and they both attended to the property, and watched it, and kept whatever right they had against parties coming on without due process of law, and that was the condition of things." It would thus appear that there was evidence which tended to show that the occupation of the land in question by Bowman and Stewart was exclusive; that all other persons not claiming under them were kept off; and that no interference was attempted of

their possession thus maintained after 1854. And it is clear that Bowman stood his ground and maintained his possession after his house was pulled down by Treat and his friends, and that he was not driven off, and did not give up possession to Treat, but that Treat was defeated in his effort to dispossess Bowman by the strong hand, and that no such effort was afterward made.

With reference to the northerly 125 feet of the block 11, denominated the "Sedgely tract," and described in findings 14 and 15, there was no dispute in the evidence, and it does not seem to be doubted in the appellant's brief that in the year 1861 it was separately inclosed by the grantees of Bowman, viz., Joseph Sedgely and I. W. Shaw, from whom the defendants here, Sedgely and Center, deraign their title, and that from that time to the present they and their grantees have continuously kept and maintained actual and exclusive and adverse possession of the whole of that parcel of land.

On the 5th of January, 1854, Bowman conveyed to one Francis Altvater a portion of his claim on the Potrero Nuevo (the whole of the same being, as before stated, about 150 acres in extent), which portion included a triangular-shaped piece of block 11 involved in this controversy.

On the 1st of December, 1859, Stewart and Pratt, who had succeeded to Bowman's title, and were in possession of the land they conveyed, deeded to Altvater block 16, in contest here. Upon these conveyances being made to him, Altvater took and maintained possession of the lands therein contained, and immediately after the last conveyance just mentioned he inclosed the land, consisting of block 16, and all of block 11 except the Sedgley tract, and all the portion of the street called Columbia, lying between those blocks, and thereafter, and up to the time of his death, he held and maintained actual, exclusive, and adverse possession of all the land within the inclosure he had thus made. He died on the 3d of De-

*c*ember, 1863. At that date an individual named Riley was in possession of the last-described premises, as the tenant of Altvater. On March 7, 1864 (evidently by collusion with this tenant), Dyson, the plaintiff's intestate, and without the knowledge or consent of Altvater's heirs or representatives, made an arrangement by which, after purchasing certain personal property which Riley had to sell, he placed one Taggart in possession of the premises as his, Dyson's, tenant.

On the 9th of March, 1865, one Plate, the administrator of Altvater's estate, commenced an action of ejectment against Taggart.

On August 22, 1865, Taggart answered the complaint, and on the 27th of December, 1875, judgment passed for the plaintiff. Thereupon, on the 28th of December, 1875, by virtue of a writ of possession duly issued, Taggart was ejected by the sheriff, and the plaintiff in the action placed in possession of the premises sued for. Defendants herein deraign title from the son and heir of Altvater, and ever since the date of the ejectment of Taggart have maintained actual, exclusive, and adverse possession of the premises.

The present action was commenced on the 27th of December, 1880.

One of the plaintiff's propositions is, that, upon the evidence, he is entitled to recover, because the possession of Robert Dyson, his intestate, and Dyson's grantor, George Treat, of the whole eleven hundred acres of the Potrero Nuevo, inclosed by the bay of San Francisco and Mission and Precita creeks upon three sides, and a stone wall and fence across the peninsula, was such as that he has title to it conferred by the Van Ness ordinance.

Of course, if Bowman and his grantee, and not Dyson and his grantor, Treat, had this possession, that contention of plaintiffs must fail.

Conceding that the first specification of particulars of

the insufficiency of the evidence to sustain the decision is full enough to enable us to understand the subject presented,— that is, that it is there claimed that the evidence being insufficient to show that Bowman ever took possession, etc., of the 150 acres of the Potrero Nuevo, which includes the land in controversy, and that therefore the evidence is insufficient to show that he ever took possession, etc., of the two blocks of land in controversy, upon the principle that, as the greater includes the less, he could not have taken possession of the smaller tract unless he took possession of the larger, — yet we do not see how, under the decisions of this appellate court, the remaining specifications of the particulars in which the evidence is insufficient to sustain the decision can be considered.

The eighth specification is: "There was no evidence to sustain or justify the second, third, fifth, sixth, seventh, eighth, ninth, tenth, eleventh, twelfth, thirteenth, fourteenth, fifteenth, sixteenth, and seventeenth findings of fact, or either of them."

Just such specifications were condemned in *Parker* v. *Reay*, 76 Cal. 105, approving *Eddelbuttel* v. *Durrell*, 55 Cal. 279, in which last, it is said, speaking of section 659 of the Code of Civil Procedure: "The purpose of the statute is apparent. It was to direct the attention of the court and counsel to the particulars relied on by the moving party, to the end that the evidence bearing on the specifications of error might be inserted in the statement and considered by the court."

The rest of the alleged specifications do not purport to state wherein in any particular the evidence is insufficient to sustain or justify the decision, but are simply narrations of what the evidence was upon the trial.

"It is not necessary that the specification should state what the evidence does show. Such a statement is insufficient if standing alone, and surplusage if joined to a proper specification." (Hayne on New Trial and Ap-

peal, 432.) Here, as we have seen, the specifications stand alone as mere statements as to what the evidence shows, without being joined to a proper specification.

The rule under which the existence or non-existence of *possessio pedis* is determined, which is necessary to confer title under the Van Ness ordinance, is stated in *Brumagim* v. *Bradshaw*, 39 Cal. 24–50, that "it is the peculiar province of a jury, under proper instructions of the court, to decide whether or not the acts of dominion relied on, considering the size of the tract, its peculiar condition and appropriate use, were of such a character as usually accompany the ownership of lands similarly situated." When the court sits without a jury, it decides questions of fact upon the same basis as the former body.

The possession which the law requires, and which, as we think, some of the evidence in the record tends at least to show was the kind of possession which Bowman had, is the subjection of the land claimed to the will of the claimant, and consists in doing as he wishes with the land, and excluding others therefrom. If the proof shows an actual and open occupation of a tract of land marked out by and within visible and defined boundaries, and a subjection of such land to the dominion of the occupant to the exclusion of all others, such proof is sufficient to show a *possessio pedis* which, if continued long enough, will satisfy the requirements of the law, and establish title, whether there be an inclosure or not. (*Sheldon* v. *Mull*, 67 Cal. 300; *Howell* v. *Rodgers*, 47 Cal. 291.)

But the plaintiff seems further to claim that passing the question as to where the title was when Riley, Altvater's tenant, allowed Dyson's tenant to take possession of the Alvater premises, that, upon the happening of that event, Dyson was in actual adverse possession, and remained by himself or tenants in such possession for such a length of time,—that is, from March 7, 1864, to

December 28, 1875,—that his title thereby must prevail, as the defendants only entered and had possession from February, 1876, and this action was begun December 27, 1880,—less than five years from the date of such entry and possession, which, as plaintiff contends, cannot avail the defendants under the statute of limitations of five years, because, as plaintiff claims, the possession of defendants since the writ of possession under the Plate judgment was issued cannot be connected with Altvater's possession, it being argued that the defendants are not entitled to add Altvater's possession to theirs to make out their five years' continuous adverse possession, by adding to their possession that of one who preceded them, when they did not enter into possession under or through the one who preceded them; that is, it seems to be urged that the administrator, Plate, was entitled to and had the possession of the Altvater land, and the son and sole heir could not convey the title and right of possession while the estate remained undistributed, as it is admitted was the case as to Altvater's estate.

As it seems to us, however, the administrator's possession and title was not adverse to the heir, and so far as any but creditors were concerned, the heir in whom the title vested, subject only to the right of the administrator to dispose of the land to pay debts, had the right to the title and possession, and the right to maintain an action and recover possession as against any one, except the administrator. (*Brenham* v. *Story,* 39 Cal. 179–183; Code Civ. Proc., secs. 1452, 1453.)

The administrator is in privity with and represents both heirs and creditors, and a judgment in ejectment recovered by or against an administrator is an estoppel in favor or against the heir and those claiming under him. (*Cunningham* v. *Ashley,* 45 Cal. 485–493; *McLeran* v. *Benton,* 73 Cal. 329–342.)

This being so, there is no sound reason for declaring that the judgment recovered by the administrator would

not inure to the benefit of those to whom the sole heir had conveyed prior to the recovery of such judgment.

We pass, then, to the proposition advanced by the appellant in his reply brief, viz., that there is no finding upon a material issue raised by the pleading, in this, that the answer pleads the Plate judgment as an estoppel against the plaintiff, and that there is no finding whether it is or is not a bar to the plaintiff's recovery. As one of the grounds given in the notice of motion for a new trial is that "the decision is against law," the point can be considered on this appeal. (*Knight* v. *Roche*, 56 Cal. 17.)

It is conceded by the respondent that such judgment would not be a bar as against the right of Dyson's representatives to litigate the question as to *the title* of the land involved in that judgment, because Dyson, the landlord, was not joined in the action against the tenant. But suppose, as we must for the purposes of this point, that the plaintiff was entitled to a finding that such judgment was no bar as to his right to litigate the question above referred to, and that he in that respect was not bound by the judgment, yet under the other findings of the statute of limitations, etc., in favor of the defendants, such a finding would not aid the plaintiff. The failure to make a finding as to a matter which would not affect the result should not be allowed to reverse an order refusing a new trial.

But the plaintiff further contends that the order should be reversed, because the court erred in admitting the Plate judgment and the writ of possession in evidence, from the fact that neither Dyson nor his representatives were bound thereby.

As to the question of title, it is conceded that they are not so bound.

But as to the question of where the actual possession of the Altvater land was from the date of the service of summons in the Plate suit against Dyson's tenant, it

seems to us that the reasons advanced by respondent's counsel in favor of the admission of the evidence objected to are sound.

While the judgment is not an estoppel against the plaintiff from setting up his title, if he have any, it is, as it seems to us, taken in connection with the other evidence, admissible to show where the actual possession of the property was.

The tenant by the judgment was found not to have had any right of possession from the date of the summons; his possession was that of Dyson only; if he had no right of possession, Dyson had none. In other words, Dyson could not maintain title by adverse possession when the only possession he had was by a tenant, who did not have any adverse possession, but one founded in fraud and collusion.

Whatever disturbs the possession of the tenant alone in possession must disturb that of the landlord, who has given his possession for the time being to the tenant. When a landlord holds possession by a tenant, "that possession ceases to be peaceable when the tenant is sued. A claimant of land who brings his action against the party whom he finds in possession thereby stops the running of limitations in favor of the party's landlord. There is such privity between the tenant and the landlord that, for the purpose of stopping limitation, the suit against the tenant is as effectual as if brought against the landlord also." (*Read* v. *Allen*, 56 Tex. 176–180.) It was also held in the case of *Read* v. *Allen*, 58 Tex. 380–382: "A judgment rendered against a tenant, and the pleadings upon which such judgment was rendered, are admissible for the purpose of showing when the possession of a landlord through a tenant ceased to be a peaceable possession, but, as against the landlord, for no other purpose."

So in *Allen* v. *Read*, 66 Tex. 13–20, the same principle seems to be announced.

In *Newman* v. *Bank of California*, 80 Cal. 368, it was decided that a co-tenant, although not joined in an action, was entitled to whatever benefit accrued to a co-tenant that was a party to such action as affecting the possession of the premises involved, the ground of the decision being the privity existing between co-tenants as to possession of property held by them, or one of them. As the privity existing between a landlord and tenant makes the possession of the tenant that of the landlord, it seems to us that, as in this case, where the landlord has his possession disturbed, and by judgment such possession is held not to have existed against the plaintiff in the action, it affects the landlord as well as the tenant, and dates from the time when the action was commenced, for the possession recovered in ejectment relates back to the commencement of the action. (*Dunn* v. *Miller*, 75 Mo. 260, 272; Sedgwick and Wait on Trial of Title to Land, sec. 743.)

For these reasons, and perceiving no prejudicial error in the record, we advise that the order be affirmed.

Belcher, C. C., and Vanclief, C., concurred.

The Court.— For the reasons given in the foregoing opinion, the order is affirmed.

Hearing in Bank denied.