### LLOYD v. BALL et al.

(District Court, N. D. California. November 13, 1896.)

1. JUDGMENT AGAINST ADMINISTRATOR—FRAUDULENT CONVEYANCES—RIGHTS OF HEIRS.

Under section 1582 of the California Code of Civil Procedure, as it stood in 1893 (providing that actions for the recovery of real or personal property, or

for the possession thereof, may be maintained by and against executors and administrators in all cases in which they might have been maintained against the testators or intestates), a judgment in an action brought by an assignee in bankruptcy against the administrator of the deceased bankrupt, to set aside conveyances of real property as fraudulent, by which judgment such conveyances are declared fraudulent, and the administrator, and all persons claiming under him or the intestate, are enjoined from asserting title to the lands, is binding upon the heirs of the intestate, and bars them from asserting title to the lands as against the assignee; and such heirs will be enjoined, at the suit of the assignee, from prosecuting actions against him to recover the lands.

2. BANKRUPTCY—ENJOINING SUITS AGAINST ASSIGNEE.

The prosecution of a suit brought against an assignee in bankruptcy, without leave of the court appointing him, will be enjoined, on his request, by such court.

Pierson & Mitchell, for complainant.

W. T. Baggett and E. A. Ball, for respondents.

MORROW, District Judge (orally). This is a bill in equity to enjoin the prosecution of suits by the defendants, heirs of John Bensley, against John Lloyd, the assignee of the bankrupt estate of Linforth, Kellogg & Co. The suits sought to be enjoined are in the superior court of the state. The bill is ancillary and supplementary to an original suit in this court, of John Lloyd, assignee, against James C. Pennie, administrator; and it is also ancillary and supplementary to the bankrupt proceedings in the case of Linforth, Kellogg & Co. It seeks to enjoin proceedings in the state court which interfere with the enforcement of the decree of this court. It appears that on February 15, 1877, the firm of Linforth, Kellogg & Co., composed of John Bensley, L. B. Benchley, and James Linforth, were adjudged bankrupts in this court; on March 26, 1877, James C. Patrick and A. L. Tubbs were appointed assignees of said bankrupts, and they thereupon qualified and proceeded to perform the duties of their office; that a deed of assignment was executed by J. M. Gitchell, Esq., register in bankruptcy, having jurisdiction in the matter, and delivered to said assignees, as provided by law; that on the 18th day of April, 1887, Patrick died, and on the 25th day of April, 1887, Tubbs resigned, and his resignation was accepted by the court; that on April 27, 1887, John Lloyd was appointed assignee, to whom Tubbs conveyed all the real and personal property of the bankrupts. On June 14, 1889, John Bensley died intestate, and James C. Pennie was appointed administrator of his estate. On February 25, 1890, suit was brought by John Lloyd in this court against the said James C. Pennie, administrator of the estate of John Bensley, deceased, to declare fraudulent and void certain conveyances that had been made by John Bensley in fraud of his creditors. The administrator appeared in said action, and filed his answer, denying the material allegations of the bill of complaint, and claiming that the conveyances alleged in the bill had been made in good faith, and for a valuable consideration. The case was tried, and on December 7, 1893, this court entered a decree adjudging that each and all of the conveyances mentioned in the complaint were fraudulent and void as against the assignee of said John Bens-

ley, bankrupt, and that the same should be canceled and annulled, and adjudged and decreed that the said James C. Pennie, administrator of the estate of John Bensley, deceased, and all persons claiming or asserting any right, title, or interest in or to said premises under the said John Bensley, or under the said James C. Pennie, administrator, should be perpetually enjoined and restrained from setting up or asserting or pretending to have any estate, right, title, or interest in or to said premises, or any part thereof.

This was an action affecting the title to and for the recovery of real property, claimed to be the property of John Bensley, a member of the bankrupt firm of Linforth, Kellogg & Co., and therefore subject to the bankruptcy jurisdiction of the district court. It was an action authorized by the law of this state.

Section 1582, Code Civ. Proc., as it stood in 1893, provided that:

"Actions for the recovery of any property, real or personal, or for the possession thereof, and all actions founded upon contracts, may be maintained by and against executors and administrators, in all cases in which the same might have been maintained by or against their respective testators or intestates."

Under this section, the case was conducted to a final decree; and John Lloyd, as assignee, then became possessed of all of the property that Bensley owned at the time of the bankruptcy proceedings, and which, as alleged in the complaint, had been conveyed away in fraud of the creditors.

The two suits to which the present proceedings relate were commenced against Mr. Lloyd, as assignee, in the superior court. One of these suits is entitled: "Mary B. Taylor, Julia Ball, Ella J. Ball, and Others vs. John Lloyd, John Lloyd, Assignee of John Bensley, James Linforth, and L. B. Benchley, Bankrupts, and Others." In this suit the complainants allege "that the plaintiffs, as sole heirs at law of said John Bensley, deceased, are now, and for a long time hitherto have been, the owners in fee of the said premises hereinafter described." The complaint describes certain premises in San Francisco that have been in the possession of John Lloyd, as assignee of the estate of John Bensley, bankrupt, and which were recovered in the suit just mentioned against the administrator. The second suit is entitled: "Julia Ball, Ella J. Ball, Mary B. Taylor, and Others vs. John Lloyd, as Assignee in Bankruptcy of the Estate of James Linforth, John Bensley, L. B. Benchley, and Others." This complaint avers "that the plaintiffs, as sole heirs at law of said John Bensley, deceased, are now, and for a long time hitherto have been, the owners in fee of the said premises hereinafter described." The complaint describes certain premises in the county of San Diego, also in the possession of John Lloyd, assignee, under the decree in this court. These suits were commenced in the superior court of this state, against Mr. Lloyd, the assignee, who thereupon commenced the present action in this court, praying that these parties be restrained from proceeding against him, because he held this property under the court, as the property of the bankrupt estate. The matter has been heard; testimony has been taken; and it now devolves upon the court to determine whether or not the

injunction heretofore issued in this case should be made perpetual.

Under section 1582 of the Code of Civil Procedure of this state, the supreme court has repeatedly held that actions affecting real property, including actions in ejectment, actions to quiet title, and other actions in which either the title or possession of real property was concerned, might be maintained against administrators, and that judgments against administrators in such actions were conclusive upon the heirs at law of the intestate.

In Cunningham v. Ashley, 45 Cal. 485, 494, Chief Justice Wallace, rendering the opinion of the court, says:

"The title upon which he [the administrator] is to recover is not his own title, nor that of the heirs or the creditors he represents, but the title of the intestate. The seisin upon which he must rely is the seisin which the deceased had at the time of his death. It is that title and that seisin which is put in issue, and the sufficiency of which is determined by the judgment rendered in the action. If the judgment be in favor of the administrator, it amounts to an adjudication that the title of the deceased, represented by the administrator, is superior to that upon which the defendant relies; and such a judgment would, upon that point, estop the defendant or his privies in a subsequent action brought for the recovery of the same premises in favor of the administrator, or the heirs, after distribution made, or in favor of any person who had subsequently succeeded to that title or to the right to assert it in court. All these consequences necessarily flow from the statutory right of the administrator to sue for the recovery of the estate of the deceased; otherwise, there is the anomaly of an action brought, and a judgment rendered upon the issue joined, by which judgment, however, nothing is, in effect, determined, and no one concluded."

See, to same effect, Spotts v. Hanley, 85 Cal. 167, 24 Pac. 738; Bayly v. Muehe, 65 Cal. 349, 3 Pac. 467, and 4 Pac. 486; McLeran v. Benton, 73 Cal. 342, 14 Pac. 879; Patchett v. Railway Co., 100 Cal. 510, 35 Pac. 73.

In Meeks v. Olpherts, 100 U. S. 564, this statute was before the supreme court of the United States. It appears that in that case George Harlan died, intestate, seised of the title of a 100-vara lot in San Francisco. Henry C. Smith was duly appointed administrator of Harlan's estate, and, having afterward resigned, Benjamin Aspinwall was appointed in his place. Aspinwall, by an order of the probate court, sold the lot in question. Under this sale, the defendants, or those under whom they claimed, entered into possession, which they held uninterruptedly up to the time of the suit. Aspinwall remained administrator several years, when he settled up his accounts, and was discharged. More than five years later an order of distribution of the estate was made in the probate court, by which the lot in question was distributed to Meeks. The defendants had purchased the lot in controversy at a sale ordered by the probate court, and had paid their money for it, and been in the peaceable adverse possession of it for a period of 16 years. The court held that, whether the probate sale was valid, so as to confer title, or not, the statute of limitations applicable to such cases was a bar to plaintiff's right of recovery. The supreme court of California had decided that the probate sale was invalid and conferred no title. The supreme court of the United States considered the question whether, under the statute, the sale by the administrator bound the heirs, and the court held that it did. It said:

"The first proposition, and, indeed, the argument of the learned counsel, concedes that, by virtue of the statutes of California, the real estate of a person dying intestate comes to the possession and control of his administrator, as personal property does; and that, while the administrator can only sell real estate upon an order of the probate court, the possession and control, the reception of the rents and profits, and the right to sue to recover possession of it when held adversely, belong solely to the administrator."

The court holds that the possession of the administrator during the administration was the possession of the heirs for the purpose of determining the title to the property, and that it devolved on the administrator during that time to bring the suit to have the conveyance declared void, and cites a number of cases where persons who have made conveyances that were invalid afterwards brought suit to have such conveyances set aside as void. This case appears to establish the law in this state, and for this court, that the suit brought in this court by Lloyd against Pennie, administrator, bound the heirs, and that they cannot now set up any title against the title vested in the assignee by virtue of the decree entered in the case of Lloyd against Pennie, administrator.

It is, however, urged on the part of the respondent that such is not the law in this state at the present time. It is said that, under the law as it now stands, the title passes to the heirs on the death of the intestate, and the administrator does not have the title to the estate. In support of this contention, reference is made to section 1384 of the Civil Code, which provides that:

"The property, both real and personal, of one who dies without disposing of it by will, passes to the heirs of the intestate, subject to the control of the probate court and to the possession of any administrator appointed by that court for the purposes of administration."

This section as originally adopted, in 1872, on the recommendation of the Code commissioners, provided that the property of an intestate should pass to his personal representatives as trustees to manage and distribute. On the suggestion of the Code examiners, the section was amended to conform to the law as it stood before the adoption of the Code section. This amendment was adopted by the legislature of 1873–74, immediately following the adoption of the Code. It is said that the case of Meeks v. Olpherts arose under the law as it stood prior to the adoption of the present section, and that, as the title passed under that former law in the first instance to the personal representative,—that is, the administrator,—and not to the heirs, the decision in that case would be the law under such provision, but not under the present law. The difficulty about this proposition is that the law as it now stands was the law before the adoption of the Codes. And section 1384 of the Civil Code, as recommended by the commissioners, was only in existence from January 1, 1873, to July 1, 1874. Meeks v. Olpherts is not based upon the law as it stood during this period, but upon the law as it existed prior to the Codes. In fact, the decision of the court in that case was not based on that provision of law at all. It is under section 1582 of the Code of Civil Procedure that the law has been established.

Section 1582 of the Code of Civil Procedure provides:

77 F.—24

"Actions for the recovery of any property, real or personal, or for the possession thereof, and all actions founded upon contracts, may be maintained by and against executors and administrators in all cases in which the same might have been maintained by or against their respective testators or intestates."

That law is the same now as it has been since the practice act. There has been no change in that law, and it is this provision of law that the supreme court passed on in the case of Meeks v. Olpherts; that is to say, that the right to sue or be sued with respect to an estate is one that is vested in the administrator during the term of administration, and, although the title passed to the personal representative for the purpose of administration in the original section 1384, the title passes to the heirs subject to administration in the amended section. It is simply a difference in the verbiage or construction of that particular section. In the first instance, the section provides that the title passes to the personal representative, and also provides what shall be done with it in the way of administration. In the amended section, the title passes to the heirs subject to the administration. As the law now stands, no question can be raised as to where the title remains after the death of the intestate and before the appointment of the administrator, or upon the death or resignation of an administrator or an executor; but I do not discover that there is any difference with respect to the liability of the person to be sued, respectively, in the one case or in the other. In both instances the bringing of the suit is provided for under section 1584 of the Code of Civil Procedure.

In this case, suit was brought by Mr. Lloyd, as assignee, against Mr. Pennie, the administrator of the estate of John Bensley, under this provision of section 1582; and, under that section, certain conveyances made by Bensley were declared fraudulent and void. What are the circumstances connected with those conveyances? After the adjudication in bankruptcy of John Bensley, and of the firm of Linforth, Kellogg & Co., Bensley and his wife, for the purpose of defrauding his creditors and the assignee in bankruptcy, and to secure a restoration to Bensley of his individual property, which had vested in the assignee by virtue of the bankruptcy proceedings, induced the assignee and creditors to enter into an agreement with him for a release to him, by the assignee, of all his individual property, and for his discharge from all his debts; and such an agreement was entered into, by the terms of which Bensley covenanted and agreed to pay any deficiency which might arise on the claims of the creditors after the firm assets of Linforth, Kellogg & Co. had been applied to the payment of such claims. This agreement was ratified and confirmed by the court, and Bensley discharged from his individual and co-partnership debts; and thereupon the assignee reassigned, transferred, and conveyed to Bensley all of his property and estate which before that had vested in the assignee by virtue of the bankruptcy proceedings. After the property had been restored to Bensley, instead of managing it, and appropriating the proceeds to the payment of the balance due the creditors of Linforth, Kellogg & Co., in accordance with the terms of his agreement with the assignee and creditors, he conveyed all his property to his wife and others, by fictitious convey-

ances, and through fictitious persons, without consideration, leaving no assets at the time of his death, and nothing to pay the deficiency of $275,000 due the creditors of the bankrupts. It was to declare those transactions fraudulent and void that Lloyd, as assignee, brought the suit against Pennie, administrator; and, by the decree, the assignee resumed the title which Bensley had in his lifetime. That is precisely the effect of the decree, namely, the court canceled all the Bensley conveyances, and decreed that they were fraudulent and void, and conveyed nothing. The effect was, as just stated, that Lloyd resumed or took the title, which was conveyed to him by the register in bankruptcy during the lifetime of Bensley. I do not see how the heirs can come in now, and claim any rights, under these circumstances, or can claim they have any title to this property.

But it is said, on behalf of the respondents in this case, non constat but they have secured an afterwards acquired title; that Bensley may have acquired some other title; and the title they are now suing for in the superior court, as the heirs of John Bensley, may be a title he acquired after the property had been conveyed to him by the assignee. If that is the fact, they could set it up in this case; but they have not done so. It is not claimed they have any such title, as a matter of fact; so, as the case stands now on the complaint, the answer, and the testimony taken in the case, these people are suing Lloyd in the state court for this property which came to him from Bensley. They are claiming it because they are heirs of Bensley, and that fact alone is not sufficient to enable them to maintain these actions against the assignee.

There is still a further objection to this proceeding against the assignee. The district court, as the court of bankruptcy, has absolute control over the estate of a bankrupt. There is no question about that. All the cases where this question has been discussed distinctly hold that the court has control over the proceedings for the purpose of protecting the estate, determining its value, and for the purpose of distributing it to the creditors. It is true there are cases where suits have been brought against assignees in the state court for the purpose of ascertaining and determining certain rights. But it always has been done on application made to the court of bankruptcy for leave to proceed in the other court against the assignee. It never has been done, to my knowledge, without such permission. In this case there was no permission obtained from this court to sue the assignee. He is an officer of this court. He is carrying out a decree of this court. He is under the direction of this court in everything he does. The property is in custodia legis. He can neither sell nor dispose of it in any way without the direction of the court. The bankruptcy law never permitted a suit to be brought against an assignee under the circumstances of this case, and respondents have no right or authority under the law to proceed in the state court against Lloyd, and sue him for property that he holds for and under the direction of this court. So that, in any view of the law, this suit cannot be maintained against the assignee. A decree will, therefore, be entered in favor of the complainant in this case, and the injunction made perpetual.