[L. A. No. 22300.  In Bank.  July 14, 1953.]

ALBERT YORBA et al., Appellants, v. ANAHEIM UNION WATER COMPANY (a Corporation) et al., Respondents.

Harry M. Irwin, Forgy, Reinhaus & Forgy and Fred Forgy for Appellants.

H. C. Head, R. C. Mize, Cosgrove, Cramer, Diether & Rindge, T. B. Cosgrove, Head, Jacobs & Corfman and H. C. Head for Respondents.

TRAYNOR, J.—Plaintiffs are the owners of 21 parcels of land located on the north side of the Santa Ana River in Orange County. In 1874 this land was all riparian to the river and consisted of the Prudencio Yorba, Vicente Yorba, and William McKey allotments of the Rancho Canon de Santa Ana. These allotments were contiguous and each abutted on the river. They were brought under the common ownership of Prudencio Yorba by 1879, and since that date plaintiffs have succeeded to his interest. Approximately 5 miles upstream to the east of the easterly border of plaintiffs' land is the intake of defendant Anaheim Union Water Company's Cajon Canal. This canal runs in a generally westerly direction on the north side of the river and carries the river water across plaintiffs' land for use on land lying downstream and to the west thereof. Approximately a mile and a half upstream to the east of plaintiffs' land on the south side of the river is the intake of the Santa Ana Valley Irrigation Company canal. Water diverted into this canal is used on land lying to the south of the river. At the present time the Anaheim company divides the normal surface flow of the river into two equal parts and diverts half of it into its Cajon Canal. The remaining half is diverted by the Santa Ana company before it reaches plaintiffs' land. From the Cajon Canal, the Anaheim company delivers 100 miner's inches of water for use

on land lying upstream from plaintiffs' land, 200 inches to defendant Yorba Irrigation Company for use on land lying downstream from plaintiffs' land, and it supplies the remainder of the flow to its stockholders for use on their land lying downstream from plaintiffs' land. Various of the plaintiffs or their predecessors in interest tapped the canal with pipes at seven locations and used the water taken through these pipes on their land.

In 1949 plaintiffs filed this action against the Anaheim Union Water Company and the Yorba Irrigation Company. In their first cause of action they alleged that their land was riparian to the river, and they sought to establish the priority of their riparian rights over any water rights defendants might claim in the river. By their second cause of action they sought to establish a servitude in the Cajon Canal. They alleged that they were entitled to the free use of water from the canal for watering stock and for domestic purposes and to the privileges of stockholders in the Anaheim company in obtaining water for other purposes. This claim was based on conditions contained in deeds, executed in 1876, by which plaintiffs' predecessors in interest granted an easement to the Canon de Santa Ana Water Company for the construction of the Cajon Canal.

The trial court found that certain parcels of plaintiffs' land were riparian and that others had lost their riparian rights either by conveyances of water rights or by severance of contiguity with the river. It further found that defendants' predecessors in interest had acquired the Cajon Canal and easements therefor across plaintiffs' land by prescription and not by virtue of any conveyance from the Canon de Santa Ana Water Company, and that, prior to 1903, the Anaheim company had acquired by prescription the right to divert one half of the normal surface flow of the Santa Ana River into the Cajon Canal and carry such water across plaintiffs' land, subject to the right of certain upstream owners to receive 100 miner's inches and the right of the Yorba company to receive 200 miner's inches. It also found, however, that certain of the plaintiffs had acquired by prescription the right to divert water from the canal through the seven pipes hereinabove mentioned. Judgment was entered accordingly, and plaintiffs appeal.

Plaintiffs contend that there is no evidence to support the finding that the full prescriptive period had run against them prior to 1903. Defendant Anaheim Union Water Company

was organized in 1884 and succeeded to the rights of various smaller water companies that had been diverting water from the north bank of the Santa Ana River. It did not, however, succeed to the water rights of the irrigators who were diverting water by means of the Yorba ditch. These irrigators later conveyed their water rights to defendant Yorba Irrigation Company, and their land, which is now supplied by the Yorba company, lies downstream from plaintiffs' land. In 1885 the Anaheim company brought an action against plaintiffs' predecessors in interest and the Yorba irrigators to quiet title to one half of the water of the river less 125 miner's inches, and to enjoin the defendants from diverting water to which the Anaheim company claimed it was entitled. It alleged that it owned various ditches and canals, including the Cajon Canal, and that the defendants were interfering with its rights by diverting as much as 400 inches of water. The defendants answered and denied that the Anaheim company was the owner of the Cajon Canal or the water rights claimed and alleged their own prescriptive rights to continue diverting water from the river. Although both the predecessors in interest of the plaintiffs in the present action and the Yorba irrigators were named as defendants in the 1885 action, it appears that the primary purpose of that action was to establish the respective rights of the Anaheim company and the Yorba irrigators to the half of the flow of the river being diverted on the north side. Thus in 1891 a preliminary injunction was entered in that action whereby the defendants were enjoined from interfering with the Anaheim company's diversion on condition that the Anaheim company deliver 200 miner's inches from the Cajon Canal into the Yorba ditch. In 1903 the place of delivery of the water specified in the injunction was changed by agreement of the parties, but in all other respects the preliminary injunction was left in effect. The Anaheim company and the Yorba irrigators and their successor, defendant Yorba Irrigation Company, were satisfied with this division of water, and it is still in effect. No further proceedings have been taken in the 1885 action, and it is still pending.

It is clear that if the diversion and division of waters formalized in the 1891 preliminary injunction had been effected solely by adverse use without the intervention of legal action, and if the water diverted had been devoted to beneficial use, defendants in this action would have perfected their prescriptive rights against plaintiffs before 1903, as the trial

court found. Plaintiffs contend, however, that there is no evidence that the Anaheim company had diverted half of the normal flow of the river before the 1885 action was filed and that the filing of that action stopped the running of the prescriptive period against them. ▮ It is true that ordinarily the filing of an action, either by the person asserting a prescriptive right, or by the person against whom the statute of limitations is running, will interrupt the running of the prescriptive period, and the statute will be tolled while the action is actively pending. (*Knoke* v. *Swan,* 2 Cal.2d 630, 632 [42 P.2d 1019, 97 A.L.R. 841]; *Estate of Richards,* 154 Cal. 478, 488 [98 P. 528]; *Alta Land etc. Co.* v. *Hancock,* 85 Cal. 219, 228 [24 P. 645, 20 Am.St.Rep. 217]; *Spotts* v. *Hanley,* 85 Cal. 155, 170 [24 P. 738]; *Newman* v. *Bank of California,* 80 Cal. 368, 373 [22 P. 261, 13 Am.St.Rep. 169, 5 L.R.A. 467].) On the other hand, however, an action that has been dismissed or abandoned does not interrupt the running of the prescriptive period. (*Langford* v. *Poppe,* 56 Cal. 73, 76-77; *Breon* v. *Robrecht,* 118 Cal. 469, 470 [50 P. 689, 51 P. 33, 62 Am.St.Rep. 247]; *Dong Chun Len* v. *Luke Kow Lee,* 7 Cal.App.2d 194, 196 [45 P.2d 827]; *Gibbs* v. *Lester,* (Tex.Com.App.) 41 S.W.2d 28, 32, 80 A.L.R. 431; *Thompson* v. *Ratcliff,* (Ky.App.) 245 S.W.2d 592, 594; see anno., 80 A.L.R. 439.)

▮ The facts of the present case bring it within the foregoing rule. Under the pleadings in the 1885 action plaintiffs' predecessors in interest could have secured a final adjudication on the merits of their riparian rights in the river and thereby have prevented defendants from acquiring any new prescriptive rights after that action was filed. (*Newman* v. *Bank of California, supra,* 80 Cal. 368, 373; *Spotts* v. *Hanley, supra,* 85 Cal. 155, 170; *Breon* v. *Robrecht, supra,* 118 Cal. 469, 470.) They did not do so, however, but instead abandoned the action and acquiesced in an arrangement whereby the Anaheim company and the Yorba irrigators secured half of the normal surface flow of the river to their exclusion. The preliminary injunction did not, as plaintiffs contend, toll the statute by preventing their predecessors in interest from asserting their rights. (See Code Civ. Proc. § 356; *Elliott & Horne* v. *Chambers Land Co.,* 61 Cal.App. 310, 312 [215 P. 99].) Although the injunction prevented them from physically interfering with the Anaheim company's diversion, it did not prevent them from establishing their rights by legal action.

█ Plaintiffs contend that there is no evidence that the water diverted by defendants has been applied to beneficial use without waste. There is evidence, however, that the water has been used for irrigation and that the supply is frequently short. In more recent years it has been necessary to augment the water diverted from the river by pumping from wells. Plaintiffs rely on a statement made in a report of the state engineer published in 1888 that the Anaheim company's works "are not economical of the supply." Read in context, however, the engineer's statement does not indicate that water was being wasted. His report stated that "The supply of water for this district [supplied by the Anaheim company] is short. As to the actual facts with respect to volumes, those, as far as known, will be found in the special chapter on water-supply, to follow. The works are not economical of the supply. A perfected system would probably greatly relieve the district from embarrassment on this score. The problem is not a simple one. Just what should be done for economy's sake and to insure best results is a point not to be quickly or lightly determined." The report also pointed out the difficulty of preventing loss of water through seepage into porous soil. There is evidence that the Anaheim company was endeavoring to conserve the water supply. The intake of the Cajon Canal was located well upstream to prevent loss of water in the sandy bottom of the lower river. It may be inferred that the Anaheim company and the Yorba irrigators were able to prevent the loss of a considerable quantity of water in the river bed by arranging to have the Anaheim company deliver water to the Yorba ditch from the Cajon Canal instead of releasing it into the river bed so that the Yorba irrigators could divert it down stream. The trial court could reasonably conclude that defendants did whatever was reasonably possible to conserve the water supply and thus applied the water to beneficial use without waste.

█ In 1876 plaintiffs' predecessors in interest deeded the right of way for the Cajon Canal to the Canon de Santa Ana Water Company. The deeds contained a provision that the grantors should "have the same privileges as full stockholders in obtaining water," and should "be supplied with the same at the lowest rate at which water is furnished," and should "have free of cost all water necessary for domestic purposes and for watering stock at convenient places on the said canal." Plaintiffs contend that this provision created

a servitude in their favor in the canal. Although the predecessor in interest of the Anaheim company acquired the right of way by prescription and not by conveyance from the Canon de Santa Ana Water Company, plaintiffs contend that the right of way was not acquired adversely to their servitude. It is unnecessary to decide whether the provision in the deeds was sufficient to create a servitude in the canal in favor of the grantors that would be binding on successors in interest of the grantee. In the 1885 action the Anaheim company asserted its rights in the Cajon Canal against plaintiffs' predecessors in interest. The answer denied that the Anaheim company owned the canal. Accordingly, the trial court could reasonably conclude that the Anaheim company asserted rights in the canal adversely, not only to the Canon de Santa Ana Water Company, but to plaintiffs' predecessors in interest as well. Thus the alleged servitude, if it existed at all, was extinguished by the running of the statutory period after 1885.

Plaintiffs contend that the trial court erred in finding that certain parcels of their land no longer have riparian rights in the river. If plaintiffs had been successful in establishing the priority of riparian rights over defendants' appropriative rights, the findings with respect to which parcels still enjoy riparian rights would be material in determining how much of the water plaintiffs could reasonably use on their riparian lands. (See Cal. Const., art. XIV, § 3.) Since, however, defendants have established a superior prescriptive right against all of the plaintiffs to divert half of the normal surface flow of the river into the Cajon Canal, the question of which of plaintiffs' lands still enjoy riparian rights is immaterial for the purposes of this action. This question might become important, however, between plaintiffs themselves with respect to the subsurface flow of the river that is not diverted by the Anaheim company and the Santa Ana Valley Irrigation Company. It might also become important if either of those companies stopped or reduced their present diversions, which together absorb the entire normal surface flow of the river. Since, however, the question is no longer material in this action, and since its determination might raise serious problems of res judicata in the event of future litigation among plaintiffs themselves, it is inappropriate that it should be determined in an action in which they have not taken adversary positions. For the same reasons no determination should be made of the ques-

tion whether certain of the plaintiffs are or are not the owners of the fee of the railroad right of way crossing their lands.

Accordingly, to the extent that the judgment determines that certain of plaintiffs' lands are not riparian to the river, and to the extent that it determines that certain plaintiffs are not the owners of the railroad right of way, it is reversed. In all other respects the judgment is affirmed. Defendants are to recover costs on this appeal.

Gibson, C. J., Shenk, J., Carter, J., Schauer, J., and Spence, J., concurred.

Appellants' petition for a rehearing was denied August 6, 1953.