[No. B075681. Second Dist., Div. Three. Sept. 5, 1995.]

CALIFORNIA MARYLAND FUNDING, INC., Plaintiff, Cross-defendant and Respondent, v.
WYONNA DELL LOWE, Defendant, Cross-complainant and Appellant;
OBIA LOWE, JR., et al., Cross-defendants and Respondents.

**COUNSEL**

Alan D. Sirota and Gary L. Sirota for Defendant, Cross-complainant and Appellant.

Michael S. Magnuson for Plaintiff, Cross-defendant and Respondent.

Taylor, Kupfer, Summers & Rhodes and Stephen F. Peters for Cross-defendants and Respondents.

## OPINION

## ALDRICH, J.—

### INTRODUCTION

In the underlying action for ejectment, filed by plaintiff First Boston Credit Corporation, now named California Maryland Funding, Inc., defendant Wyonna Dell Lowe cross-complained to quiet title to the same property, claiming acquisition by adverse possession. Defendant has appealed from the judgment entered in favor of plaintiff, contending it is not supported by substantial evidence. Based on settled California Supreme Court case law, we hold defendant's earlier lawsuit over the right to the property, which was filed during the statutory period for adverse possession, but later dismissed for failure to prosecute, did not operate to toll the statute of limitations. Therefore defendant's occupancy of the property was continuous for the statutory period. Defendant otherwise carried her burden of proving she satisfied all the elements of adverse possession. By contrast, plaintiff adduced *no* admissible evidence defendant's occupancy was permissive. Accordingly, the judgment for plaintiff is reversed with directions to enter a new and different judgment in favor of defendant, Wyonna Dell Lowe.

### FACTUAL AND PROCEDURAL SYNOPSIS

Viewed in accordance with the usual rules of appellate review (*Bowers* v. *Bernards* (1984) 150 Cal.App.3d 870, 873-874 [197 Cal.Rptr. 925]), the evidence shows on *August 26, 1973*, defendant married Reverend Obia Lowe and moved into her husband's residence located at 1710 Victoria Avenue, in the City of Los Angeles (the property). Reverend Lowe had earlier acquired the property in the dissolution of his first marriage. During his second marriage the reverend reminded defendant repeatedly that the property belonged only to him.

*In 1978*, the reverend deeded the property to himself and his three sons from his first marriage, cross-defendant Obia Lowe, Jr., and his brothers. The four Lowes held the property as joint tenants. Reverend Lowe died August 1, 1981.

On *August 10, 1981*, days after the reverend's death, defendant first learned about the joint tenancy, when the sons asked her to vacate the property. The sons have continuously requested defendant move. Defendant has refused and remains in possession of the property to this day.

Defendant testified she has always written the checks for the property's mortgage payments, which payments contain a tax impound. Since her husband's death, defendant has performed all maintenance and repairs and has even upgraded the house.

On *December 10, 1981*, because defendant believed she *owned* the property by virtue of California community property laws, defendant filed an action (Lowe v. Lowe (Super. Ct. L.A. County, 1981, No. C393044)) to set aside the gift of community property to her stepsons. The Lowe sons filed a cross-complaint to quiet title and for ejectment. However, on *May 26, 1988*, upon motion of the Lowe sons, defendant's action was dismissed for failure to prosecute. It appears the cross-complaint was also dismissed. The Lowe sons put the property up for sale.

Persisting in her claim to the property, defendant threw away the Lowe sons' for-sale signs. Despite her attempts to thwart the sale, son Ted Lowe informed defendant in 1987, that the Lowe children had conveyed the property to plaintiff. Immediately, Ace Property Management (Ace), on behalf of plaintiff, gave defendant three days' notice to quit the property. Several unlawful detainer actions were filed and eventually dismissed. Specifically, Ace filed an unlawful detainer action on behalf of plaintiff on September 14, 1987, which was dismissed on December 4, 1987. On February 25, 1988, Ace filed a second unlawful detainer action which was also dismissed without trial or judgment. On August 31, 1988, plaintiff filed a third unlawful detainer action against defendant. In that action, the municipal court ruled on December 19, 1988, defendant was not a tenant subject to an unlawful detainer action.

On *December 30, 1988,* 11 days later, plaintiff filed the present action in ejectment. Defendant cross-complained against the Lowe sons and against plaintiff, to set aside the gift of community property and seeking, by declaratory relief, to establish title. By amended cross-complaint, defendant added a cause of action to quiet title by adverse possession.

The judgment decreed in favor of plaintiff, now named California Maryland Funding, Inc., ruling that plaintiff recover the property in fee and that defendant take nothing from either plaintiff or cross-defendants, the Lowe sons. This appeal followed.

Additional facts will be discussed in connection with the analysis below.

## CONTENTION

Defendant contends there is no substantial evidence to support the judgment because defendant established her ownership by adverse possession and plaintiff failed to adduce evidence to rebut her case.

## DISCUSSION

As a preliminary matter, the property does not belong to defendant by virtue of California's community property law. The reverend acquired the residence at Victoria Avenue as part of the property settlement from his first marriage. (*In re Marriage of Weaver* (1990) 224 Cal.App.3d 478, 484 [273 Cal.Rptr. 696]; Fam. Code, § 770, subd. (a)(1).) As such, it was the reverend's separate property to dispose of as he chose. Undisputably he had the right to deed the property to his sons in 1978. (Fam. Code, § 770, subd. (b).) Hence, defendant's title must be predicated on acquisition by adverse possession.

■ The elements necessary to establish title by adverse possession are: (1) tax payments, (2) actual possession which is (3) open and notorious, (4) continuous and uninterrupted for five years, (5) hostile and adverse to the true owner's title, and (6) under either color of title or claim of right. The party asserting title by adverse possession has the burden of proving affirmatively each one of these elements. (*West* v. *Evans* (1946) 29 Cal.2d 414, 417 [175 P.2d 219]; *Mesnick* v. *Caton* (1986) 183 Cal.App.3d 1248, 1258 [228 Cal.Rptr. 779]; Code Civ. Proc., § 325.)

1. *The statute of limitations was not tolled.*

■ The central issue in this appeal is whether defendant's lawsuit to set aside the gift of community property served to toll the running of the five-year statutory period for adverse possession. Her action was filed on December 10, 1981, and was dismissed on May 26, 1988, for failure to prosecute (Code Civ. Proc., § 583.310). If the litigation interrupted the statute of limitations, then defendant has not occupied the property for the entire five-year period. Conversely, if the five-year statute were not tolled, defendant would have acquired her title by adverse possession as of August 1986.[1]

■ The general rule is that the statute of limitations can be tolled by filing, within the five-year period, an action contesting the right to the

---

[1] The statement of decision was not made part of the record on appeal and so we were compelled to call up the entire superior court file. In its statement of decision the trial court concluded "[u]nder the circumstances of this case, the prescriptive period was tolled during the pendency of the 1981 litigation and, thus, there has never been a five year period in which

property. (*Alta Land etc. Co.* v. *Hancock* (1890) 85 Cal. 219, 228 [24 P. 645].) Such an action has the effect of interrupting the continuous-possession element of adverse possession. (*Ibid.*; *Chew* v. *Leach* (1955) 134 Cal.App.2d 91, 92 [285 P.2d 93]; *Knoke* v. *Swan* (1935) 2 Cal.2d 630, 632 [42 P.2d 1019, 97 A.L.R. 841]; *Estate of Richards* (1908) 154 Cal. 478, 488 [98 P. 528]; *Spotts* v. *Hanley* (1890) 85 Cal. 155, 170 [24 P. 738]; *Newman* v. *Bank of California* (1889) 80 Cal. 368, 373 [22 P. 261]; see also *Yorba* v. *Anaheim Union Water Co.* (1953) 41 Cal.2d 265, 270 [259 P.2d 2] [hereinafter *Yorba*].) In such case, the statute remains tolled during the period that the litigation is pending. (*Alta Land etc. Co., supra,* at p. 228.)

However, an exception to this rule exists: " '. . . [T]he decided weight of authority is that an unsuccessful action leading to no change of possession does not arrest the running of the statute of limitations, and this is true whether the action is prosecuted to judgment or compromised, or whether the suit is voluntarily abandoned or *dismissed for want of prosecution.*' " (*Dong Chun Len* v. *Luke Kow Lee* (1935) 7 Cal.App.2d 194, 196 [45 P.2d 827], italics added; *Yorba, supra,* 41 Cal.2d at p. 270; see *Breon* v. *Robrecht* (1897) 118 Cal. 469, 470 [50 P. 689]; *Langford* v. *Poppe* (1880) 56 Cal. 73, 76-77, motion to dismiss writ of error granted, *Poppe* v. *Langford* (1882) 104 U.S. (14 Otto) 770 [26 L.Ed. 922]; *Hill* v. *Allan* (1968) 259 Cal.App.2d 470, 487 [66 Cal.Rptr. 676].)

■ Here, long-standing authority militates in favor of defendant. Plaintiff's assertion to the contrary, the institution of defendant's action in 1981, which was later dismissed in 1988, *did not toll* the statute of limitations. Defendant's lawsuit was dismissed for failure to prosecute and it therefore did not result in any change of possession. (*Dong Chun Len* v. *Luke Kow Lee, supra,* 7 Cal.App.2d at p. 196.)

At trial and on appeal, the parties dispute the applicability of our Supreme Court's holding in *Yorba, supra,* 41 Cal.2d at page 270. *Yorba* involves a dispute over water rights between riparian owners and an upstream water company that was diverting water for use on land downstream of the riparians. (*Id.* at p. 268.) In 1885, the water company had brought an action against the riparians' predecessors in interest to quiet title to one-half of the river's water. (*Id.* at p. 269.) A preliminary injunction issued in 1891, enjoining the riparians' predecessors in interest from interfering with the water company's diversion. In 1903, by agreement of the parties, the injunction was modified only as to the place of delivery of the water. There being no final resolution, the 1885 action was still pending as late as 1953. In

an adverse possession claim matured." For reasons which will become clear, *post,* we conclude the trial court was mistaken.

1949, the riparian owners sued the water company to establish priority of rights in the water. The trial court ruled the full prescriptive period had run against the riparians as of 1903. The riparians appealed, contending there was no evidence to support the finding the statute of limitations had run.

Noting the tolling rule and its exception, the Supreme Court in *Yorba* held the 1885 action had not tolled the statute of limitations. (*Yorba, supra,* 41 Cal.2d at p. 270.) The court reasoned, based on the pleadings, the riparians' predecessors in interest could have secured a final adjudication during the water company's 1885 action which had been filed during the statutory period. In so doing, the riparians could have prevented the water company from acquiring prescriptive rights after that action was filed. Instead, the riparians acquiesced in an arrangement by preliminary injunction thereby precluding final resolution of the issue. The preliminary injunction never prevented the riparians from asserting their rights: "Although the injunction prevented them [the riparians' predecessors in interest] from physically interfering with the Anaheim company's diversion, it did not prevent them from establishing their rights by legal action." (*Yorba, supra,* 41 Cal.2d at p. 270.)

This case is analogous to *Yorba* and we see no reason the same result should not obtain. As with the water company, defendant filed her action in 1981 to establish her right to the property. Like the riparians, the reverend's sons could have vigorously litigated their cross-complaint against defendant for ejectment or to quiet title, thereby securing a final adjudication of title to the property. By doing so, the sons could have prevented defendant from acquiring her rights by adverse possession. (*Yorba, supra,* 41 Cal.2d 270.) Instead, just like the riparians who abandoned the 1885 suit and acquiesced to a preliminary injunction, the Lowe sons moved to dismiss defendant's action and voluntarily dismissed or abandoned their cross-complaint, thereby precluding final resolution of the matter.

Plaintiff's assertion that "No other legal remedy was available to the Lowe sons in the 1981 suit," is specious. Actually, an entire arsenal of legal options was available to the sons to protect their right to the property: not only could they have prosecuted their cross-complaint which had been filed during the statutory period, but nothing prevented them from filing a separate action in ejectment at any time before 1986.[2] (Cf. *Langford* v. *Poppe, supra,* 56 Cal. at pp. 76-77.) In short, the same reason the Supreme Court invoked the nontolling rule in *Yorba* justifies its application here: by causing

---

[2]Plaintiff insists this case is more like the appellate decision in *Butcher* v. *Milner* (Cal.App.). However, *Butcher* was ordered depublished by the Supreme Court on October 1, 1992 (S027888).

defendant's action to be dismissed and by dismissing their cross-complaint the Lowe sons abandoned the earlier action by which they could have prevented defendant from asserting her rights. Sitting on their own rights, the Lowe sons allowed the statutory period to run.

In an attempt to distinguish *Yorba*, plaintiff and Obia Lowe, Jr., argue defendant should not benefit from allowing her own lawsuit to languish for years and be dismissed for failure to prosecute. Citing no authority, plaintiff argues, "*Yorba* applies only where the dismissed or abandoned action has been brought by the owner." This argument is unpersuasive.

It is irrelevant who files the earlier action[3]: just as in this case, the party seeking title by adverse possession in *Yorba*, the water company, was the party who had filed the earlier lawsuit. Hence, nothing in *Yorba* precludes defendant from invoking the same exception to the tolling rule. The clear implication of *Yorba* is that *any* party claiming paramount title to property must assert its right by litigation; *neither* party may "sleep on its rights." In this case, defendant hardly slept on her rights. Defendant vigorously litigated title to this property for years: not only did she file her action in 1981, but she has been fighting numerous unlawful detainer actions ever since. In short, because defendant's unsuccessful action was dismissed and resulted neither in a change of possession, nor in a final adjudication at all, and because the Lowe sons were never precluded from asserting their legal rights, the statute of limitations ran continuously and uninterrupted for more than five years.

## 2. *Hostility*

Plaintiff nevertheless contends, even were the rule in *Yorba* to apply, defendant's occupancy was permissive, not hostile or adverse. (*West v. Evans, supra*, 29 Cal.2d 414, 417.)

By "hostility" the courts mean " '. . . ". . . the claimant's possession must be adverse to the record owner, 'unaccompanied by any recognition, express or inferable from the circumstances, of the right in the latter.' " [Citation.]' " (*Buic v. Buic* (1992) 5 Cal.App.4th 1600, 1605 [7 Cal.Rptr.2d 738].)

The evidence of defendant's hostile and adverse use is abundant: Defendant's refusal to surrender the property, tossing away for-sale signs,

---

[3]Logically, the rule proposed by plaintiff, namely that the *Yorba* exception should apply only when the dismissed action is brought by the owner simply begs the question to be decided, namely, who is the owner.

maintaining and improving the property, her 1981 lawsuit to set aside a gift of community property (*Langford* v. *Poppe, supra,* 56 Cal. at pp. 76-77), and her insistence on contesting the many unlawful detainer actions actually demonstrate her hostility and adversity. (*Ibid.*) Defendant's claim is not defeated merely because she erroneously believed her right to the property was derived from community property precepts. Defendant always maintained her superior right, admitting of no recognition of the rights in plaintiff or the Lowe sons. (*Mesnick* v. *Caton, supra,* 183 Cal.App.3d at p. 1259.)

In an effort to demonstrate defendant's use was permissive rather than hostile plaintiff points to the trial testimony of Obia Lowe, Jr., that when the dispute between the parties arose in 1981, they agreed defendant could pay the mortgage in lieu of rent. Where defendant was paying rent, plaintiff argues, her use was permissive, not adverse and hostile. In response, defendant contends there is insufficient evidence of the rent agreement, with the result that plaintiff failed to prove permissive use, i.e., to negate her proof of hostility.

Turning to the record, it shows in 1981, the sons retained Attorney Janet Zimmerman and defendant was represented by the firm of Epstein & Reid. Lowe, Jr., testified:

"Q. Was it your understanding from Janet Zimmerman that it was agreed that Wyonna Lowe would pay the mortgage payments—[¶] MR. SIROTA [defendant's attorney]: Objection, hearsay. [¶] THE COURT: It would appear to be. [¶] MR. PETERS [Obia Lowe, Jr.'s attorney]: The question goes as to what his understanding was. [¶] MR. SIROTA: It goes to the issue of whether or not mortgage payments were supposed to be paid as to other persons other than mortgage payments. [¶] THE COURT: Sorry, I didn't understand that. [¶] MR. SIROTA: The answer is made to tend to prove the issue of what he is going to say and not what his state of mind is. [¶] MR. PETERS: Let me rephrase the question. [¶] THE COURT: Okay. [¶] Q BY MR. PETERS: After a meeting you had in 1981 with your attorney Janet Hargrave Zimmerman stating that meeting point as to place and time, was it your belief that Wyonna Lowe paid the mortgage payments in lieu of rent? [¶] A Yes. [¶] MR. SIROTA: Your Honor, my objection will be the same all the way through for this line of questioning. [¶] THE COURT: All right. [¶] The objection is overruled. . . . [¶] MR. SIROTA: Q Mr. Lowe, did you ever have a meeting with Mrs. Lowe, the present Mrs. Lowe about her paying rent? [¶] A No, I didn't. . . . [¶] Q BY MR. SIROTA: Was it your belief that Mrs. Lowe was going to pay the mortgage payments as rent? [¶] A Yes. [¶] Q What caused you to come to that conclusion? [¶] A It was an agreement between Epstein & Reid and my lawyer. They agreed upon that, that she would pay the

monthly payment in lieu of rent. . . . [¶] MR. SIROTA: Your Honor, at this time I would like to read from the deposition of Mr. Reid. . . . [¶] Q BY MR. SIROTA: Now Mrs. Zimmerman gave you this information. [¶] A Yes. I received that information from her and her office. [¶] Q Did you ever talk with Mrs. Lowe? [¶] A No, I did not. [¶] Q Did you ever go to see the house that you were—that you allegedly owned when Mrs. Lowe was living in there after this? [¶] A I passed by it, yes. [¶] Q You never went in and talked to her? [¶] A No, I never talked to her. [¶] Q You never gave her monthly payment slips? [¶] A No. I never gave her monthly payment slips. . . . [¶] Q Was this agreement in writing? [¶] A No. This agreement was not in writing. Q Did it have a term on it? [¶] A As long as she stayed in the house. [¶] Q So it is your contention now that there was an agreement for as long as she stayed in the house not in writing, that she would pay the mortgage payments? [¶] A In lieu of rent, as long as she stayed in the house that she would pay the monthly payments until this matter was settled. [¶] Q And that was not in writing? [¶] A No, it was not. [¶] Q This was allegedly done by your attorney Ms. Zimmerman? [¶] A As far as I know it was an agreement between Mrs. Zimmerman, and Epstein & Reid at the time this all started."

Defendant entered a timely objection which she repeated. The objection was overruled and so it was properly preserved for appeal. (See Evid. Code, § 353.) Later in the trial, defendant *expressly denied that she ever paid rent or that such an agreement existed.*

Based thereon, the trial court, in its statement of decision, specifically "accept[ed] the testimony of Obia Lowe, Jr., that Wyoner [*sic*] Lowe was to make the mortgage payments, taxes, and improvements as rent payments. He testified that this arrangement was to last until the matter was resolved."

Obia Lowe, Jr.'s testimony about what Zimmerman told him concerning an agreement reached between Zimmerman and Epstein is obviously hearsay. (Evid. Code, § 1200;[4] see *Frudden Enterprises, Inc.* v. *Agricultural Labor Relations Bd.* (1984) 153 Cal.App.3d 262, 269 [201 Cal.Rptr. 371].) Hence, the evidence was inadmissible.

At trial, Obia Lowe, Jr.'s attorney insisted that such testimony was not hearsay because not offered for the truth of the matter asserted. Rather the testimony went to Obia Lowe, Jr.'s state of mind. (Evid. Code, §§ 1250, 1252.) If so, the testimony was irrelevant. That is, Obia Lowe, Jr.'s understanding and his attorney's understanding that a rental agreement existed are

---

[4]Evidence Code section 1200 provides in relevant part, "(a) 'Hearsay evidence' is evidence of a statement that was made other than by a witness while testifying at the hearing and that is offered to prove the truth of the matter stated. [¶] (b) Except as provided by law, hearsay evidence is inadmissible. . . ."

irrelevant to whether *defendant's* use was hostile or permissive. The question of hostility is resolved by reference to the intention of the *adverse user*, defendant in this case. (See *Mesnick* v. *Caton, supra,* 183 Cal.App.3d at p. 1259.) Therefore, the testimony must have been offered for the truth of the matter, namely to prove the existence of a rental agreement, in which case it was inadmissible hearsay.[5]

Finally, the admission of this hearsay testimony was clearly prejudicial. (Evid. Code, § 353, subd. (b).) The court specifically "accepted" the testimony, finding defendant was paying rent. That finding in turn led inexorably to plaintiff's argument here that defendant's use of the property was permissive. (Cf. *Estate of Williams* (1977) 73 Cal.App.3d 141, 147-148 [140 Cal.Rptr. 593].) Most important, we take judicial notice of the findings of fact and conclusions of law of the municipal court, dated December 19, 1988, in the case of First Boston Credit Corp. v. Lowe (Mun. Ct. L.A. County, 1988, No. 24346), filed on August 31, 1988, declaring defendant was not a tenant for purposes of unlawful detainer.[6] The only evidence of defendant's permissive use was Obia Lowe, Jr.'s inadmissible testimony about the rental agreement. Without the improperly admitted testimony, there is literally *no* evidence of the agreement.

Considering the entire record on appeal, and indulging in the presumptions as required (*Taormino* v. *Denny* (1970) 1 Cal.3d 679, 686 [83 Cal.Rptr. 359, 463 P.2d 711]), we discern *no evidence to support the trial court's finding* that defendant's mortgage payments were made in lieu of rent. Therefore, plaintiff has failed entirely to negate the hostile element of adverse possession.

■■■ Turning to the remaining elements of adverse possession, defendant satisfied her burden of proving affirmatively each one of the elements. (*West*

---

[5]At oral argument, plaintiff attempted to demonstrate the relevance of Obia Lowe, Jr.'s state of mind. Plaintiff's argument worked thus: as a cotenant, defendant was obligated to affirmatively oust the sons. However, as Obia Lowe, Jr., was under the impression defendant was paying rent, he was unaware defendant's claim was hostile to his own rights. Hence, defendant never affirmatively ousted the sons. While it is true that the exclusive occupancy by a cotenant is deemed permissive (*West* v. *Evans, supra,* 29 Cal.2d at p. 418), this rule has " 'no application to a case where the possession of the person in question was neither avowedly begun as a tenant in common, nor instituted under a deed or instrument which defined [her] title as such.' " (*Kraemer* v. *Kraemer* (1959) 167 Cal.App.2d 291, 307 [334 P.2d 675].) Obia Lowe, Jr.'s argument fails because defendant never possessed the property as a cotenant.

[6]Specifically, that court concluded, "D is not a tenant subject to eviction through U/D proceedings, that D is not a person that comes under the provisions of CCP 1161; that even if D was a person that came under the provisions CCP 1161, sub ¶ 1a, as a tenant at will, that the notice to quit served on D is improper and insufficient, that a 3 day notice to quit was served on D instead of a 30 day notice required by CCP 1161 sub ¶ 1 for a tenant at will. [¶] Judgement for D. . . ."

v. *Evans, supra,* 29 Cal.2d at p. 417; Code Civ. Proc., § 325.) Defendant moved onto the property in 1973 and has actually possessed it openly and notoriously and continuously ever since. Her use was hostile and adverse as above demonstrated. Mistakenly believing the property was part of the marital community, defendant asserted ownership under a claim of right. A "claim of right may be established when the occupancy . . . occurred through mistake." (*Gilardi* v. *Hallam* (1981) 30 Cal.3d 317, 322 [178 Cal.Rptr. 624, 636 P.2d 588].) Finally, defendant paid the taxes through an impound in her mortgage payments.

Therefore, when the reverend's sons conveyed the Victoria Avenue property to plaintiff, the statute of limitations had already run. Where a purchaser only obtains such title as its grantor has, plaintiff did not acquire title to the property.

Given defendant has satisfied every element of adverse possession, judgment must be entered in her favor. ■ "When the plaintiff has had full and fair opportunity to present the case, and the evidence is insufficient as a matter of law to support the plaintiff's cause of action, a judgment for defendant is required and no new trial is ordinarily allowed, save for newly discovered evidence. [Citations.]" (*McCoy* v. *Hearst Corp.* (1991) 227 Cal.App.3d 1657, 1661 [278 Cal.Rptr. 596].) ■ Where no evidence was adduced by plaintiff and cross-defendants to negate successfully any of the elements of adverse possession, and where defendant has otherwise carried her burden to prove each such element, the judgment must be reversed. Under the rule of *McCoy,* we enter a new judgment for defendant.

## DISPOSITION

The judgment appealed from is reversed with directions to enter a new and different judgment in favor of defendant, Wyonna Dell Lowe, on the complaint and in favor of cross-complainant, Wyonna Dell Lowe, on the cross-complaint. Costs on appeal are awarded to appellant.

Klein, P. J., and Croskey, J., concurred.