Filed 5/5/14  Pham v. Vo CA2/5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| MEN THI PHAM,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>TUNG HOANG VO et al.,<br><br>    Defendants and Respondents. | B246989<br><br>(Los Angeles County<br>Super. Ct. No. BC461365) |

APPEAL from a judgment of the Superior Court of Los Angeles County, David L. Mining, Judge.  Affirmed.

Gilbert & Nguyen, Jonathan T. Nguyen for Plaintiff and Appellant.

Pete Nguyenton Nguyen for Defendants and Respondents.

Plaintiff Men Thi Pham appeals the judgment of dismissal entered after the trial court sustained, without leave to amend, the demurrer of defendants Tung Hoang Vo, The Group, Cong Nguyen, H&H Perfection Fabrication, Inc., and Tuan Ngoc Pham to this quiet title lawsuit. We agree with the trial court's determination that the statute of limitations on plaintiff's adverse possession claim was tolled during the pendency of an earlier quiet title action, and so affirm the judgment of dismissal.

FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff first took possession of the real property in question ("the property"), in 2000 with permission of the record title holder. Five years later, after she was directed to vacate the property, plaintiff filed a quiet title action (the "First Action"), seeking title to the property on the legal theories of constructive trust and adverse possession. The trial court found that there was no constructive trust, but entered judgment in plaintiff's favor based on her claim of adverse possession.

Defendant appealed the judgment in the First Action. In May 2009, in an unpublished opinion, this court reversed the decision of the trial court. We held that plaintiff had failed to establish her adverse possession claim because her initial possession of the property was permissive, and she failed to prove that her possession of the property was hostile and adverse to the defendants' interest before she filed suit in March 2006. (*Pham v. Vo* (May 15, 2009, B203709).) We remanded the case to the trial court for further proceedings, which were not concluded until October 2012, when a judgment against plaintiff was entered.

During the period between the filing of our 2009 opinion and the entry of judgment by the trial court on remand, plaintiff filed a second quiet title action (the "Second Action") seeking title by adverse possession. Plaintiff alleged that her continued possession of the property subsequent to the filing of the First Action was clearly adverse and hostile to defendant's title, thereby providing the sole element lacking from her earlier adverse possession claim.

2

Defendants demurred to the First Amended Complaint filed in the Second Action, contending that the prescriptive time period, that is, the period of uninterrupted hostile possession upon which Plaintiff based her claim of adverse possession, was not met because it was tolled during the pendency of the First Action. The trial court sustained the demurrer without leave to amend. Plaintiff timely filed a Notice of Appeal.

The sole issue on appeal is plaintiff's contention that on the date that she filed the First Action, a new five year prescriptive time period – that is, five years of continuous and uninterrupted possession – commenced to run. She maintains that in the Second Action, she satisfied both the "hostility" element of an adverse possession claim by her having filed and litigated the First Action, and the five years of uninterrupted possession requirement, since more than five years had accrued between the filing of the First Action and the Second Action.

## STANDARD OF REVIEW

"On review of an order sustaining a demurrer without leave to amend, our standard of review is de novo, 'i.e., we exercise our independent judgment about whether the complaint states a cause of action as a matter of law.' [Citation.]" (*Santa Teresa Citizen Action Group v. State Energy Resources Conservation & Development Com.* (2003) 105 Cal.App.4th 1441, 1445.) "'"We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. [Citation.] We also consider matters which may be judicially noticed." [Citation.] Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. . . .'" (*Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1126.)[1]

---

[1]    Plaintiff does not contend in the present case that the court abused its discretion in not granting leave to amend.

3

DISCUSSION

The Supreme Court in a series of opinions in the late 19th and early 20th centuries ruled that in cases claiming prescriptive rights, including adverse possession cases, that the continuous and uninterrupted possession of property for a period of five years, a necessary element for a claim of a prescriptive right, was tolled when litigation was filed either by the owner or the adverse possessor seeking a determination as to ownership of the property in question. (*Alta Land & Water Co. v. Hancock* (1890) 85 Cal. 219, 228; *Kirsch v. Kirsch* (1896) 113 Cal. 56, 59; *In re Estate of Richards* (1908) 154 Cal. 478, 488; *Knoke v. Swan* (1935) 2 Cal.2d 630, 632.)

In 1953 Justice Roger Traynor authored a Supreme Court opinion, *Yorba v. Anaheim Union Water Co.* (1953) 41 Cal.2d 265 ("*Yorba*"), dealing with a dispute as to ownership of water rights between riparian users, with one party claiming prescriptive rights to a portion of the water. In recognition of the foregoing decisional law, he stated, "It is true that ordinarily the filing of an action, either by the person asserting a prescriptive right, or by a person against whom the statute of limitations is running [the record title owner], will interrupt the running of the prescriptive period, and the statute will be tolled while the action is actively pending. [Citations.] On the other hand, however, an action that has been dismissed or abandoned does not interrupt the running of the prescriptive period. [Citations]." (*Id.* at p. 270.)

Thus, as of 1953, it was clear that in California, there was a tolling of the statute of limitations in prescriptive rights cases, including claims of ownership by adverse possession, while the issue of ownership was being actively litigated. However, if the litigation was terminated by dismissal (voluntary or involuntary) or abandonment, then the time period during which the litigation was ongoing did not interrupt the running of the prescriptive period.

Plaintiff relies on *California Maryland Funding, Inc. v. Lowe* (1995) 37 Cal.App.4th 1798, 1801 ("*Maryland*") to argue that an exception to the tolling rule applies in this case. Specifically, she relies on the following quoted language from

4

*Maryland,* which itself is a quote from an earlier appellate opinion, *Dong Chun Len v. Luke Kow Lee* (1935) 7 Cal.App.2d 194, 196: "'[T]he decided weight of authority is that an unsuccessful action leading to no change of possession does not arrest the running of the statute of limitations, and this is true *whether the suit is prosecuted to judgment* or compromised, or whether the suit is voluntarily abandoned or dismissed for want of prosecution.'" (*Maryland, supra,* 37 Cal.App.4th at p. 1804, emphasis added.) Without benefit of any analysis, plaintiff maintains *Maryland* supports her position that a quiet title action which is prosecuted to judgment and resolved against her does not toll the statute of limitations, because she continued in possession of the property. We disagree.

In *Maryland*, Division Three of this District Court of Appeal relied on *Yorba* to hold: "In the underlying action for ejectment filed by plaintiff First Boston Credit Corporation, now named California Maryland Funding, Inc., defendant Wyonna Dell Lowe cross-complained to quiet title to the same property, claiming acquisition by adverse possession. Defendant has appealed from the judgment entered in favor of plaintiff, contending that it is not supported by substantial evidence. Based on settled California Supreme Court case law, we hold defendant's earlier lawsuit over the right to the property, which was filed during the statutory period for adverse possession but later dismissed for failure to prosecute, did not operate to toll the statute of limitations.[2] Therefore defendant's occupancy of the property was continuous for the statutory period." (*Maryland, supra,* 37 Cal.App.4th at p. 1801.) As the Court of Appeal explained, "This case is analgous to *Yorba* and we see no reason why the same result should not obtain. . . . Like the riparians [in *Yorba*], the [plaintiffs] could have vigorously litigated their cross-complaint against defendant for ejectment or to quiet title, thereby securing a final adjudication of title to the property. By doing so, [they] could have prevented defendant from acquiring her rights by adverse possession. (*Yorba*, *supra*, 41 Cal.2d at p. 280.) Instead just like the riparians who abandoned the 1885 suit

---

[2] The earlier action was dismissed after seven years for failure to prosecute pursuant to Code Civ. Proc., § 583.310.

5

and acquiesced to a preliminary injunction, the [plaintiffs] . . . abandoned their cross-complaint, thereby precluding final resolution of the matter." (*Id.* at p. 1805.)

We concur in the holding of the appellate court in *Maryland,* which ruling falls squarely under the Supreme Court's holding in *Yorba,* that is, that there is no tolling of the prescriptive time period if the action upon which the tolling was based is dismissed or abandoned. Here, the First Action was *not* dismissed or abandoned; it was tried to judgment which determined that plaintiff had no claim of title to the property based on adverse possession. Therefore, pursuant to the holdings of both *Yorba* and *Maryland*, there was a tolling of the prescriptive time period while the First Action was pending, including the time on appeal. The language of the *Maryland* opinion upon which plaintiff relies, to the effect that the prescriptive period is not tolled if the action is prosecuted to judgment without a change in possession, describes factual circumstances not before the court in *Maryland,* and is thus obiter dictum. Consequently, it provides no authority in support of plaintiff's position.

In sum, once the title owner has defeated the adverse possessor's claim, he must regain possession of the real property in order to interrupt the possessor's period of continuous and uninterrupted possession. However, until the claim is adjudicated, and so long as the parties are actively litigating the issue of ownership of the real property, the law is clear that the limitations period is tolled by the adverse possessor's quiet title action. (See *Yorba, supra,* 41 Cal.2d 265; see also *McKenna v. Elliott & Horne Co.* (1953) 118 Cal.App.2d 551, 554 ["Appellant could not have acquired title by adverse possession subsequent to the entry of the judgments in the actions in which her claims were rejected [because] [t]hese two actions were filed in May, 1947, and February, 1948, and the present action was brought in July, 1950. Appellant's claims were adjudicated in these two actions [1947 and 1948], and her present suit [1950], to be successful, must be based upon a title acquired *subsequent* to such adjudications" (emphasis added)].)

6

DISPOSITION

The judgment is affirmed.  Defendants shall recover their costs on appeal.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS


MINK, J.[*]


I concur:



TURNER, P.J.

---

7

MOSK, J., Dissenting

I dissent. The applicable five year period of adverse possession was not tolled. As I discuss, this case raises an issue as to tolling that has been dealt with in varying ways by California cases, by authorities in other jurisdictions, and by treatise writers. The preferable rule is the one that I believe is applicable in this case.

The elements necessary to establish ownership of real property by adverse possession are the following: tax payments and actual possession that is open, notorious, continuous, uninterrupted for five years, and hostile and adverse to the true owner's title and under either color of title or claim of right. (*California Maryland Funding, Inc. v. Lowe* (1995) 37 Cal.App.4th 1798, 1803.) Code of Civil Procedure section 325, subdivision (b) provides, "In no case shall adverse possession be considered established . . . unless it shall be shown that the land has been occupied and claimed for the period of five years continuously . . . ." Possession interrupted by the filing of an action before the statutory period had elapsed "removes the basis of such a claim." (*Knoke v. Swan* (1935) 2 Cal.2d 630, 632.) Here plaintiff does not seek to invoke the period of possession before the filing of her first action. Rather, she asserts that the five-year period for adverse possession commenced after the filing of that action.

Defendants contend that a plaintiff cannot claim title to real property by adverse possession subsequent to entry of a judgment in a prior action in which the claim was rejected, when a new action was brought less than five years after the adjudication of the prior action. (See 12 Witkin Summary of Cal. Law (10th ed. 2005) Real Property, § 401, p. 470.) Plaintiff counters with the following language in *California Maryland Funding, Inc. v. Lowe*, *supra*, 37 Cal.App.4th at p. 1804: "However an exception to this rule exists: '". . . [T]he decided weight of authority is that an unsuccessful action leading to no change of possession does not arrest the running of the statute of limitations, and this

is true whether the action is prosecuted to judgment or compromised, or whether the suit is voluntarily abandoned or *dismissed for want of prosecution*."'" (See also *Dong Chun Len v. Luke Kow Lee* (1935) 7 Cal.App.2d 194, 196.)

The legal authorities are not clear on the nature or result of the litigation that will have the effect of tolling the five-year period. It is stated in 6 Miller and Starr, Cal. Real Estate (3d ed. 2013) § 16:21, pp. 16-52, "Litigation between an adverse possessor and the owner of the property that does not result in a change of possession, whether commenced by the owner or the adverse possessor, does not toll the statute of limitations." That authority also states, "Actions that are compromised, abandoned, or dismissed do not affect the continuity of the possession in any manner. In other words, any judicial proceeding not resulting in a judgment regarding ownership or right of possession does not interrupt the running of the statute of limitations." (*Ibid.*) Thus, they suggest by this statement, which appears to be at odds with the above-quoted statement, that only a judgment regarding ownership or right to possession is necessary, not a change in possession. The authors then added a new variation: "whether the action is filed by the owner or the possessor, the action does not toll the limitations period if it does not result in a change of possession, whether the action proceeds to judgment, is compromised, or is dismissed for want of prosecution. *The period of limitations continues to run as long as the owner has a remedy.*" (*Id.* at pp. 16-53.) Here, they employ the requirement that the owner has a remedy. The case law also is not clear on whether the prior litigation, in order to toll the period, must result in a change of possession or determine ownership or just have occurred.

In *Langford v. Poppe* (1880) 56 Cal. 73, the owner of real property commenced an ejectment action against the possessor, which action was dismissed. The court said that the dismissal precluded any tolling and that the possessor's opposition tended to prove that possession was adverse (see *Hill v. Allan* (1968) 259 Cal.App.2d 470, 487 [no tolling if action dismissed]). In *Carpenter v. Natoma Water & Mining Co.* (1883) 63 Cal. 616, 617, the court said that even a judgment for ejectment does not stop the running of the statute of limitations unless it is entered. In *Alta Land & Water Co. v. Hancock* (1890) 85

2

Cal. 219, 228, the court said that an action in ejectment that resulted in a final judgment and writ of possession in the owner stopped the running of the statute. As pointed out by the court in *Dong Chun Len v. Luke Kow Lee, supra,* 7 Cal.App.2d at p. 196, "the element of unsuccessful litigation [was not] involved." Moreover, the court noted the law applicable to adverse possession of land is "not necessarily the same" as prescriptive title to the use of water. (*Id.* at p. 195.) In *Breon v. Robrecht* (1897) 118 Cal. 469, 470-471, the court said, "the mere commencement of an action of ejectment which is afterward dismissed does not disturb an adverse possession. . . . Neither is it necessary for the purposes of this case, to consider the effect of an unexecuted judgment upon adverse possession—as in *Carpenter v. Natoma Water etc. Co.*, 63 Cal. 616." (See *Hodgkins v. People's Water Co.* (1918) 177 Cal. 730, 735.) In *Kirsch v. Kirsch* (1896) 113 Cal. 56, a husband and wife contested title to real property. It was awarded to the husband, but the wife asserted she had since acquired new title by adverse possession. The court held that the wife's possession during the period during the pendency of the litigation could not be viewed as being adverse as all such rights were suspended. In *Westphal v. Arnoux* (1921) 51 Cal.App. 532, 535, the court said, "That the litigation between the two spouses had the effect of interrupting the statute of limitations [for adverse possession] seems clear. . . . [T]he statute of limitations would not begin to run against the rights created by the judgment rendered in favor of the wife and vesting the real property in her as her separate property, until that judgment had become a final determination of the controversy between the parties litigant [citations] . . . ." In *In re Estate of Richards* (1908) 154 Cal. 478, 488, the court said "while he and she might otherwise have been in possession of the requisite time they were not in the peaceable and undisputed possession, as the title and *right of possession* were being then actually litigated in court. (Italics added.)

In *Yorba v. Anaheim Union Water Co.* (1953) 41 Cal.2d 265, 270 (*Yorba*), the court said, "It is true that ordinarily the filing of an action, either by the person asserting a prescriptive right, or by the person against whom the statute of limitations is running, will interrupt the running of the prescriptive period, and the statute will be tolled while the

3

action is actively pending.  [Citations.]  On the other hand, however, an action that has been dismissed or abandoned does not interrupt the running of the prescriptive period. [Citations.]"  (See also *Welsher v. Glickman* (1969) 272 Cal.App.2d 134, 138; 12 Witkin, Summary of Cal. Law, *supra,* Real Property, § 401, pp. 469-470.)  *Yorba* might stand for the proposition that litigation that is not dismissed or abandoned tolls the five year limitations period for adverse possession.  It does not, however, address specifically if there are other litigation circumstances that would not toll that five-year limitations period.  Moreover, as noted in *Dong Chun Len v. Luke Kow Lee, supra,* 7 Cal.App.2d at page 196 [cited with approval in *Yorba, supra,* 41 Cal.2d at page 276], *Yorba* was a prescriptive easement to the use of water case, which might be different than adverse possession of real property in this connection.  *McKenna v. Elliott & Horne Co.* (1953) 118 Cal.App.2d 551 was decided, in effect, by the doctrine of res judicata.  (See Witkin, Cal. Procedure (5th ed. 2008) Pleading, § 1005, p. 414.)

Addressing that issue, the court in *California Maryland Funding, Inc. v. Lowes*, *supra*, 37 Cal.App.4th at p. 1804 said there was an exception to the rule that litigation tolls the period if an unsuccessful action leads to no change of possession.  The court did not limit the exception to dismissals or abandonments, but said, "this is true whether the action is prosecuted to judgment . . . ."  (*Ibid*.)  The court cited *Dong Chun Len v. Luke Kow Lee, supra,* 7 Cal.App.2d at pp. 196-197, which said, "In 2 C.J. 109 the rule is stated as follows: 'While it is the rule in some jurisdictions that the mere bringing of suit against the adverse clamant breaks the continuity of possession, the decided weight of authority is that an unsuccessful action leading to no change of possession does not arrest the running of the statute of limitations, and this is true whether the action is prosecuted to judgment or compromised, or whether the suit is voluntarily abandoned or dismissed for want of prosecution.'  . . . We think it is clear that the foregoing cases show the rule obtaining in this state is the same as that delineated in 2 C. J. 109, as quoted above."  (See 54A Cal.Jur.3d (2008) Real Estate, § 855.)

There is likewise a lack of uniformity of the rule in other jurisdictions.  One authority wrote, "One of the perplexing questions which has frequently been the subject

4

of judicial inquiry is the determination of the stage the landowner's action must reach before there is a break in the continuity of the adverse possession." (Taylor, *Continuity in Adverse Possession of Land* (1942) 27 Iowa L.Rev. 396, 405 (Taylor).) Tiffany on Real Property provides, "The bringing of an action by the true owner to recover the possession, if followed both by a judgment in his favor and the recovery of possession thereunder, interrupts the running of the statute, and such interruption occurs, it has been decided at the time of the bringing of the action. Where the decree in a proceeding to register the title to land relates back to the date of the petition, the filing of the petition has been held to interrupt the running of the statute. The bringing of an action, however, which results unsuccessfully to plaintiff, does not interrupt it. And abandonment of the suit, it has been said, will have the same effect as if it had never been instituted. [¶] There are a number of decisions to the effect that even though a judgment is rendered for plaintiff in an action to recover possession, the statute does not cease to run unless there is a change of possession in accordance with the judgment, while there are other decisions to the contrary. In some of the earlier cases dealing with this subject, the asserted ineffectiveness of a judgment, now followed by a change of possession, was based upon the consideration that a judgment in ejectment decided only that the plaintiff was entitled to possession during the term named in the fictitious demise, and was consequently not conclusive as to the title generally, but this consideration has ceased to be effective with the change in the nature of the action. And the view that a change of possession is necessary can be based only on the theory that, in the absence of a change of possession, the running of the statute is not interrupted unless the possession loses its hostile character, and that it does not lose such character merely as a result of the rendition of a judgment in favor of the rightful owner. It is said on the other hand, that the judgment does have the effect of depriving the possession of its adverse character, for the reason that it estops the defendant therein from asserting that he holds under claim of title. But conceding that a holding under claim of title is necessary to put the statute in motion, it is by no means clear that a judgment in ejectment against the wrongful possessor should properly estop him from the asserting of such a holding. It estops him

5

from asserting title in subsequent litigation, but he is at liberty, it should seem, after the rendition of the judgment, as before, to assert in conversation or otherwise, that he claims title to the property, and having made such assertion, to show, in subsequent litigation, that he did so.  The bringing of an action by the true owner to assert his rights, followed by the recovery of the judgment by him, without any actual change of possession, might, it is submitted, be regarded as effective to stop the running of the statute against him, for the reason that in that way he has asserted, in the most conclusive manner possible, his rights in the land.  While his failure to assert his rights by either action or entry involves laches on his part, it does not seem that he should be regarded as guilty of laches, and made to suffer accordingly, because, after asserting his rights by an action brought to a successful conclusion, he fails to follow this up by an entry on the land.  He has a right to assume, after judgment in his favor, and in the absence of anything to show the contrary, that defendant, in retaining possession, is doing so in his behalf, that is, in accord with the adjudication."  (4 Tiffany, Real Property (3d ed. 2013) § 1161, fns. omitted.)

Similarly, an authority has acknowledged that some courts hold "that a judgment for the title owner in his action of ejectment against the adverse possessor does not, of itself, arrest the operation of limitation acts, and that if the adverse possessor retains his possession, nothing else being done, the statute will continue running against the owner's title." (Taylor, *supra,* 27 Iowa L.Rev. 408.)  But he also concludes that although "there may be sound reasons for holding that a mere judgment in an action of ejectment or other purely possessory action will not break the running of limitation acts in favor of the adverse possessor, no sound reason has yet been adduced for such holding as to a judgment in a proceeding which determines with finality that the adverse claimant has not, and that the dispossessed plaintiff has, title to the land." (*Id.* at p. 409.)

That authority discussed two cases[1] pointing out that the nature and results of the litigation can be determinative.  "In both of these cases, the prior proceeding was an

---

[1]   *Rosenstihl v. Cherry* (Ohio 1926) 151 N.E. 642, *Bessler v. Powder River Gold Dredging Co.* (Ore. 1919) 178 Pac. 237.

6

action to quiet title. In both, there had been a final judgment against the adverse possessor. In neither had the adverse possessor given up possession or the dispossessed owner sought to take possession. Both cases held that the final judgment in the prior case had not arrested the operation of the limitation act in favor of the adverse possessor. In the Oregon case, the adverse possessor and not the title owner was the plaintiff. The judgment was merely that the case be dismissed. 'The former case did not undertake to do anything about the possession . . . . The case therefore is not so strong as where the judgment has been rendered directly adjudicating the possession of the land and awarding it to one or the other.' In the Ohio case, the land involved was an eighteen-inch strip along the disputed boundary. The petition therein failed 'to make any averments with reference to the strip of land in dispute in the case at bar.'" (Taylor, *supra,* 27 Iowa L.Rev. at p. 410.) As in those cases, here there was no effort in the litigation to regain possession and the right of possession was not the issue or adjudicated.

Other authorities have been more cryptic on the subject. Thus, Thompson on Real Property does say, "[t]he filing of a quiet title action by an adverse possessor does not interrupt the running of the possession." (10 Thompson on Real Property (3d ed. 2013) § 87.14, p. 192.) It added, "The bringing of a suit within the prescriptive period interrupts an adverse holding if followed by a judgment *and recovery of possession thereunder by the plaintiff. . . .* Where the action results unsuccessfully to the plaintiff, there is no interruption of the adverse holding." (*Id.* at § 87.14, pp. 190-191, italics added.) On the other hand, Powell on Real Property states that "the institution by the possessor of an action to quiet title does not interrupt the continuity of possession unless the owner's attempt to deny the possessor's title is successful." (16 Powell on Real Property (2013 ed.) § 91.07[2], p. 91-46.) Unlike most of the examples referred to by the authorities, here, the prior action was brought by the person in possession not the owner.[2]

---

2  Burby, Real Property (3d. ed. 1965) § 112, p. 274, fns. omitted, italics added ["The institution of an action *against an adverse claimant* to recover possession of the land or to determine ownership merely suspends the operation of the statute during the time of such proceedings"].

7

From a public policy and practical standpoint, unless there is a change of possession, any prior litigation should not toll the running of the five year period. If the possessor stays on the property notwithstanding litigation involving her right to be on the property, her presence is adverse and hostile. Only if there is a change in possession arising out of the litigation should tolling take place because that would be a new circumstance. Otherwise, the possessor continues the adverse possession, including, as here, the payment by the possessor of the real estate taxes. Indeed, the existence of litigation or a judgment determining the right to possession or ownership renders continuous possession adverse. The owner can stop the adverse possession by bringing an unlawful detainer action or ejectment action to effect a change of possession. Here, in the prior action, the owner did not even seek to regain possession or quiet title.

It is true that sometimes an unlawful detainer action will be stayed pending the outcome of a quiet title action based on adverse possession. But the issue here is whether that quiet title action tolls the five-year period. As soon as that action is determined, if the owner's rights are vindicated, he, she, or it can take immediate steps to regain possession of the property. And if the period of the quiet title litigation approaches five years, the owner may still take steps to regain possession.

The earlier litigation, a quiet title action, was commenced by the possessor, the plaintiff here. Ultimately, she was not successful because prior to 2006, plaintiff's possession was not adverse. But the matter was remanded to the trial court "to determine what further proceedings should occur." The record does not establish that there was any determination that defendants had title or were entitled to possession. In the prior action, no defendant sought or obtained any change of possession. A defendant did bring an unlawful detainer action. That was dismissed without prejudice on July 21, 2009, and resulted in no change of possession. (See *Langford v. Poppe, supra,* 56 Cal. at p. 76.) So, even if, as some authorities suggest, a conclusive judgment in favor of the owner's title in the property tolls the period of limitation that would be of no benefit to defendants here because the record does not reflect any such judgment.

8

Defendants' assertion that plaintiff's stipulation to the dismissal of the unlawful detainer action somehow estops plaintiff from contending that there was no tolling of the five-year period lacks merit. None of the requirements for judicial or equitable estoppel has been established by the demurrer. (See *Blix Street Records, Inc. v Cassidy* (2010) 191 Cal.App.4th 39, 46-47 [judicial estoppel precludes party from taking inconsistent positions on separate judicial proceedings and can be based on findings of fact]; *Youngman v. Nevada Irrigation Dist.* (1969) 70 Cal.2d 240, 249, fn. 7 [equitable estoppel "rests on the theory that the party to be estopped *may not prove certain facts* if he has by his conduct or declarations misled another to his prejudice"].) Neither the complaint nor matters judicially noticed contain any indication of inconsistent positions by plaintiff or that defendants were misled by plaintiff.

Plaintiff's claim is based on a period of time not litigated in the earlier action so that res judicata does not bar the claim. (See *McKenna v. Elliott & Horne Co. supra,* 118 Cal.App.2d at p. 554 (second action barred by res judicata.) In any event, defendants did not raise the defense of res judicata. (5 Witkin Cal. Procedure (5th ed. 2008) Pleadings, § 1127, p. 555.)

The trial court erred in sustaining the demurrer. Even if defendants can attempt to show that under the peculiar circumstances of this case, the five-year period did not mature, that cannot be resolved at the pleadings stage. I believe the judgment should be reversed.

MOSK, J.

9