Filed 1/8/15  McBride v. Stewart CA2/5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| ANA McBRIDE,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>GIRLEE STEWART,<br><br>    Defendant and Respondent. | B249439<br><br>(Los Angeles County<br>Super. Ct. No. BC474777) |

APPEAL from a judgment of the Superior Court of Los Angeles County. Roy L. Paul, Judge. Affirmed.

Ana McBride, in pro per., for Plaintiff and Appellant.

Marc S. Duvernay for Defendant and Respondent.

Plaintiff Ana McBride filed suit against Girlee Stewart, individually and as the administrator of the Estate of Brenda Pillors (the Estate) to establish her rights in certain real property owned by Ms. Pillors at the time of her death in 2005.  The trial court granted the Estate's demurrer to the complaint, ruling that plaintiff's action was time-barred.  We conclude the complaint fails to state a cause of action upon which relief could be granted, and so affirm the judgment.


FACTUAL AND PROCEDURAL BACKGROUND

Prior to his death, Isaiah Pillors and his daughter, Brenda, held title as joint tenants to residential real property located at 2621 Virginia Road in Los Angeles (the Property).  When Mr. Pillors died in 1999, Ms. Pillors became the fee simple owner of the Property.

According to the factual allegations of the first amended complaint, which we take to be true for purposes of this appeal, plaintiff and Ms. Pillors, a resident of Virginia, entered into a written agreement for plaintiff's purchase of the Property.  That agreement was destroyed by Ms. Pillors's fiancé, Marwan Burgan, in 2005, shortly after Ms. Pillors's death; plaintiff did not produce a copy of the agreement.  The complaint recites the terms of the agreement as follows:  "On or about March 1, 2004, Plaintiff and [Ms. Pillors] entered into a written Agreement in which [Ms. Pillors] agreed to sell the Real Property to the Plaintiff and further agreed that [Ms. Pillors] would pay for:  water, gardener, mortgage, property taxes and insurance.  They agreed that Plaintiff would pay for the repairs to get them started and [Ms. Pillors] would reimburse $4,000, and the remaining expenses would be held towards the purchase of the property to take place in August 2006.  [¶] . . . Another consideration was the renovations done to the home; . . . in return [Ms. Pillors] turned over possess[ion] of the property in March 2004, renovations were completed in August 2004 and Plaintiff moved-in in mid-August of 2004."  The complaint does not recite the price plaintiff agreed to pay to purchase the Property.

Plaintiff alleges that the Estate "ratified" the foregoing agreement when, in April 2010, plaintiff and Girlee Stewart, Ms. Pillors's great-aunt who commenced a probate proceeding in Louisiana in connection with Ms. Pillor's estate, executed a "California

2

Residential Purchase Agreement and Joint Escrow Instructions" pursuant to which plaintiff agreed to buy and Ms. Stewart agreed to sell the Property for the purchase price of $160,000, to be financed by a lender of plaintiff's choice, with a 90-day escrow period. The sale did not close, however, because the title company would not insure the title without an order for sale issued by a California probate court, and the lender would not finance the purchase in the absence of title insurance.

In late December 2010, after Ms. Stewart commenced a probate proceeding in California, a second "California Residential Purchase Agreement and Joint Escrow Instructions" was executed by plaintiff and Ms. Stewart on behalf of the Estate, on substantially the same terms as the April 2010 agreement. The escrow period provided for in the agreement was set to expire on March 29, 2011. Plaintiff had difficulty securing financing for the purchase, due in part to the deteriorated condition of the Property. On March 15, 2011, plaintiff sent an e-mail to the Estate's attorney asking "if I get another lender to step[ ]in would the estate be willing to ex[t]end the escrow period?" The Estate's attorney replied the following day, informing plaintiff that neither the administrator nor the beneficiaries of the Estate would agree to extend the escrow period. Consequently, the sale of the Property to plaintiff was not consummated.

Thereafter, Ms. Stewart, on behalf of the Estate, filed two unlawful detainer actions to obtain possession of the Property, which ultimately resulted in plaintiff's removal from the Property on January 25, 2012.

On December 7, 2011, plaintiff filed this lawsuit against the Estate and Doe defendants alleging causes of action for breach of contract and adverse possession, and seeking specific performance, declaratory relief, quiet title, a preliminary and permanent injunction, and monetary damages. On July 16, 2012, at plaintiff's request, the Estate's default was entered. The Estate moved to set aside the entry of default on August 6, 2012, on the grounds that the default was taken through the Estate's mistake, inadvertence, surprise or excusable neglect or, in the alternative, through the mistake,

inadvertence, surprise or excusable neglect of the Estate's attorney. The motion was accompanied by an attorney affidavit of fault pursuant to Code of Civil Procedure section 473, subdivision (b), but did not include the Estate's proposed responsive pleading, also required by that section. On October 12, 2012, the Estate filed its demurrer to the complaint. The trial court thereafter granted the motion and set aside the default.

After a noticed hearing, the trial court sustained the Estate's demurrer to the original complaint with leave to amend. Plaintiff filed a first amended complaint, to which the Estate again demurred. The trial court sustained that demurrer without leave to amend, ruling that all of plaintiff's claims were based on the 2004 agreement entered into with Ms. Pillors, and that any claims arising under that agreement were barred by the statute of limitations.

Plaintiff timely appealed the resulting judgment of dismissal.

## DISCUSSION

1. *Motion to set aside the default*

Plaintiff challenges the propriety of the trial court proceedings because the Estate's application for relief from default was not accompanied by its answer to the complaint as required by Code of Civil Procedure section 473, subdivision (b). The argument is not well-taken. Although the Estate's application to set aside the default did not include its proposed responsive pleading as required by statute, the Estate corrected this deficiency by filing a demurrer to the original complaint before the trial court ruled on the motion. Contrary to plaintiff's contention, the court was not required to deny the application simply because the Estate had not included its demurrer with the motion to set aside the default. A trial court has discretion to permit the untimely filing of a demurrer. (*Jackson v. Doe* (2011) 192 Cal.App.4th 742, 750; *McAllister v. County of Monterey* (2007) 147 Cal.App.4th 253, 281 ["Even assuming for argument's sake that the demurrer was filed late, the trial court nevertheless had discretion to entertain it"].)

4

2.  *Demurrer to the complaint*

Plaintiff maintains that her amended complaint properly set forth causes of action for breach of contract and adverse possession such that the trial court erred in sustaining the Estate's demurrer.

"Our Supreme Court has set forth the standard of review for ruling on a demurrer dismissal as follows:  'On appeal from a judgment dismissing an action after sustaining a demurrer without leave to amend, the standard of review is well settled.  The reviewing court gives the complaint a reasonable interpretation, and treats the demurrer as admitting all material facts properly pleaded.  [Citations.]  The court does not, however, assume the truth of contentions, deductions or conclusions of law.  [Citation.]  The judgment must be affirmed "if any one of the several grounds of demurrer is well taken.  [Citations.]" [Citation.]  However, it is error for a trial court to sustain a demurrer when the plaintiff has stated a cause of action under any possible legal theory.  [Citation.]  And it is an abuse of discretion to sustain a demurrer without leave to amend if the plaintiff shows there is a reasonable possibility any defect identified by the defendant can be cured by amendment.  [Citation.]'  [Citations.]" (*Payne v. National Collection Systems, Inc.* (2001) 91 Cal.App.4th 1037, 1043–1044.)

We begin by noting that while plaintiff's complaint set forth six "causes of action," she claims an interest in the subject Property based on two discrete legal theories:  a contractual right to purchase to the Property and a claim of ownership through adverse possession.  Plaintiff's remaining "causes of action" for specific performance, declaratory relief, quiet title and injunctive relief are dependent upon the success of the breach of contract or adverse possession claims.  We therefore discuss these two theories which plaintiff maintains establish her rights in the Property.

5

a. *Breach of contract*

"[T]he elements of a cause of action for breach of contract are (1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff." (*Oasis West Realty, LLC v. Goldman* (2011) 51 Cal.4th 811, 821.)

Plaintiff relies on the original agreement with Ms. Pillors to establish her right to purchase the Property, and contends that the Estate breached that agreement by failing to transfer to Property to her. According to the amended complaint, the subject agreement was entered into in March of 2004 and anticipated a closing date in August 2006. The allegations of the complaint establish that the four year statute of limitations for breach of a contract in writing (Code Civ. Proc., § 337) expired in or about August of 2010, well before plaintiff filed this lawsuit in December 2011.

Plaintiff also maintains that the Estate breached the December 2010 agreement to sell the Property to her.[1] However, plaintiff admits that she could not obtain FHA financing for the purchase due to needed repairs, and therefore requested an extension of the closing date in order to locate a new lender. The Estate declined to extend the closing date, which it had a right to do under the terms of the purchase agreement. Consequently, plaintiff does not, and cannot, allege that she fully performed all obligations required of her pursuant to the terms of the December 2010 purchase agreement.

Based upon the foregoing, we conclude that the complaint fails to state a cause of action for breach of contract. Moreover, plaintiff proffered no additional facts which, by amendment of the complaint, would state an actionable breach of contract claim. Consequently, the trial court properly sustained the demurrer to her cause of action for breach of contract without leave to amend.

---

[1] Because this agreement superceded the April 2010 purchase and sale contract, we do not discuss the latter agreement.

6

b. *Adverse possession*

"The elements necessary to establish title by adverse possession are: (1) tax payments, (2) actual possession which is (3) open and notorious, (4) continuous and uninterrupted for five years, (5) hostile and adverse to the true owner's title, and (6) under either color of title or claim of right. The party asserting title by adverse possession has the burden of proving affirmatively each one of these elements." (*California Maryland Funding, Inc. v. Lowe* (1995) 37 Cal.App.4th 1798, 1803.) A complaint seeking to quiet title based on adverse possession "shall allege the specific facts constituting the adverse possession." (Code Civ. Proc., § 761.020.)

Plaintiff pleads her claim of adverse possession in conclusory terms: "Plaintiff's possession has been actual, open, hostile, continuous, and exclusive from March 2004 to January 25, 2012, when defendants . . . forcibly remove[d] the plaintiff after seven years and ten months of possession." As indicated above, the initial possession was pursuant to her agreement with Ms. Pillors, and thus was not hostile and adverse to the true owner's title. The complaint sets forth certain "hostile" actions of Ms. Pillors's fiancé, Mr. Burgan (who tore up the written contract) and Ms. Stewart (who hired a real estate broker and attempted to sell the property in 2007 before she was appointed personal representative of the Estate). She does not, however, explain how her permitted possession of the Property was transformed into hostile possession, other than to assert that the Estate breached her original contract with Ms. Pillors. And indeed, plaintiff cites ongoing discussions with Mr. Burgan and Ms. Stewart in which they did not object to but rather acquiesced in her continued possession of the Property. Moreover, in April 2010 and again in December 2010, plaintiff executed a "California Residential Purchase Agreement and Joint Escrow Instructions," both of which described the Property as being "tenant-occupied," with the tenant (that is, plaintiff) to remain in possession subsequent to the close of escrow, and impliedly acknowledged that the Estate's title was superior to any interest plaintiff had in the Property.

In sum, the first amended complaint fails to state a claim for which relief may be granted, and plaintiff has suggested no further amendment to the complaint which would correct the deficiencies noted above. Consequently, the trial court properly sustained the Estate's demurrer to the amended complaint. And because neither of the legal theories upon which plaintiff claimed an interest in the Property survived demurrer, her additional causes of action for specific performance, declaratory relief, quiet title and injunctive relief were properly dismissed as well.

DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

GOODMAN, J.*

We concur:

TURNER, P.J.

MOSK, J.

---

* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

8